# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01654-SCT

*STATE OF MISSISSIPPI*

*v.*

*ROGER WAYNE WOODALL*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/1/1999 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CONO A. CARANNA, II |
| | LISA DODSON |
| ATTORNEY FOR APPELLEE: | JOE SAM OWEN |
| NATURE OF THE CASE: | CRIMINAL-FELONY |
| DISPOSITION: | REVERSED AND REMANDED -11/29/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/20/2001 |

### EN BANC.

### SMITH, PRESIDING JUSTICE, FOR THE COURT:

¶1. Roger Wayne Woodall was arrested on February 24, 1997, and charged with committing fourteen acts of unlawfully acquiring a controlled substance by passing a forged prescription to a practitioner. The Grand Jury of the First Judicial District of Harrison County, Mississippi, returned a five-count indictment against him on February 28, 1998. The trial court granted Woodall's Motion to Dismiss for Violation of the Accused's Constitutional Rights to a Speedy Trial and Due Process of Law, and the State brought this appeal. Woodall's failure to timely assert his right to a speedy trial and the absence of actual prejudice substantially outweigh any presumptive prejudice Woodall may have suffered as a result of the one-year delay between arrest and indictment. The trial court was manifestly erroneous in dismissing the charges against him. Accordingly, this Court reverses the dismissal, reinstates the indictment, and remands the case for trial.

### FACTS

¶2. The Mississippi Board of Medical Licensures ("Board"), which completed an investigation of the activities of Dr. Ron Woodall, the brother of appellee Woodall, in March 1996, contacted the Mississippi Bureau of Narcotics ("MBN") with information regarding possible criminal activity by Woodall. The MBN's subsequent investigation of Woodall led to his February 1997 arrest. Woodall posted bond on the day of his arrest and has remained out on bond since that time.

¶3. In March of 1997, as part of its investigatory efforts, the MBN obtained handwriting exemplars from Woodall which were sent to an independent laboratory in Louisiana for analysis.[1] The Louisiana expert reported his findings some two to three months later and, at the request of the MBN, filed a supplemental report several months afterward. Neither of these reports specifically found that Woodall had forged any of

the prescriptions. During its investigation, the MBN also obtained a tape-recorded statement of Dr. Woodall. Sometime around February of 1997, this statement was lost. As Dr. Woodall had legal counsel representing him, the MBN attempted to contact his attorney to set up another meeting with him. These efforts failed, and eventually the MBN contacted Dr. Woodall directly and obtained a second statement in December 1997.

¶4. In January 1998, John C. "Sonny" Johnson, whom Woodall claimed to be a key defense witness, died. Woodall's counsel stated that Johnson had witnessed a transaction that was the subject of the allegations. Johnson, however, had not been listed by Woodall as a potential witness in discovery, nor had Johnson come forward with any exculpatory information prior to his death. The State also indicated that Johnson and Woodall shared cases and office space and that they may have been law partners.

¶5. After Woodall was indicted in February 1998, he filed a motion to dismiss based upon the statute of limitations, arguing that the action was barred because the indictment had been filed over two years after the crimes were allegedly committed.[2] *State v. Woodall*, 744 So. 2d 747, 748 (Miss. 1999). The trial court granted dismissal before Woodall's trial began. On appeal, this Court reversed and remanded, while reinstating the indictment. *See id*. at 750. At that time, we declined to address whether Woodall's Sixth Amendment right to a speedy trial had been denied. *Id*. We found that the issue was being raised for the first time on appeal and thus directed the trial court to evaluate that issue on remand. *Id*.

¶6. On remand, Woodall raised the speedy trial issue, and after a hearing, the trial court again dismissed the matter, finding that the one-year lapse between arrest and indictment was presumptively prejudicial, that the State had offered no valid explanation for the delay, that Woodall's failure to raise the issue earlier did not prevent him from arguing it now, and that Woodall had suffered actual prejudice. The State appealed this dismissal.

## ANALYSIS

¶7. The only issue presented in this appeal is whether Woodall's Sixth Amendment right to a speedy trial was violated. This Court has stated that speedy trial claims necessarily entail questions of fact regarding "whether the trial delay rose from good cause." *DeLoach v. State*, 722 So. 2d 512, 516 (Miss. 1998). Therefore, this Court will uphold the trial court's findings on the issue of speedy trial where supported by "substantial, credible evidence; [but] if no probative evidence supports the trial court's finding[s]..., this Court will ordinarily reverse." *Ross v. State*, 605 So. 2d 17, 21 (Miss. 1992). As in other cases in which the trial court must make factual determinations, this Court will review those findings using the "clearly erroneous" standard. *Stokes v. State*, 548 So. 2d 119, 122 (Miss. 1989).

### (1) DOES THE SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL APPLY TO THE TIME BETWEEN WOODALL'S ARREST AND INDICTMENT?

¶8. The Sixth Amendment of the United States Constitution guarantees the right to a speedy trial. U.S. Const. amend. VI.[3] That right has been deemed a fundamental right. *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S. Ct. 988, 18 L. Ed 2d 1 (1967). This Court has consistently held that this fundamental right arises at the "time of a formal indictment or information or else the actual restraints imposed by *arrest* and holding to a criminal charge." *Perry v. State*, 637 So. 2d 871, 874 (Miss. 1994) (quoting *Lightsey v. State*, 493 So.2d 375, 378 (Miss.1986)) (emphasis added).

¶9. In the case at bar, the trial court found that the Sixth Amendment right to a speedy trial came into consideration on February 24, 1997, the date of Woodall's arrest. Under Mississippi case law, the trial court properly ruled that the Sixth Amendment applied.

## (2) WAS WOODALL'S SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL VIOLATED UNDER THE GUIDELINES OF *BARKER v. WINGO*?

¶10. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), stands as the seminal case on the issue of the Sixth Amendment right to a speedy trial. This Court has consistently followed the approach set forth in *Barker* since its inception. *Perry v. State*, 419 So. 2d 194, 198 (Miss. 1982); *Wells v. State*, 288 So. 2d 860, 862-63 (Miss. 1974). In *Barker*, the United States Supreme Court stated that courts should consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his [speedy trial] right, and prejudice to the defendant" when faced with a Sixth Amendment speedy trial issue. 407 U.S. at 530. In regard to these four factors, the Court admonished that they "are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533.

### (A) LENGTH OF DELAY

¶11. The State admits that the one-year delay between Woodall's arrest and indictment is presumptively prejudicial. However, the State argues that the existence of that presumption merely requires this Court to analyze the remaining three factors. In *Barker*, the Court characterized the "length of delay" factor as a "triggering mechanism," stating that the other three factors should be considered only if the trial court found a "presumptively prejudicial" period of delay. 407 U.S. at 530. The Court explained that, absent some period of excessive delay, there could be no speedy trial violation, and, therefore, no need to explore the other three factors. *Id*. The Court, however, declined to set specific guidelines as to what would constitute a "presumptively prejudicial" delay, indicating that the decision would hinge upon the facts of each particular case. *Id*.

¶12. In setting those guidelines in Mississippi, this Court has held that a delay of eight months or more would constitute a "presumptively prejudicial" delay. *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989). Nonetheless, this Court has denied dismissal in cases even where the delay far exceeded that presumptive period. *See Taylor v. State*, 672 So. 2d 1246, 1258-59 (Miss. 1996) (denying dismissal despite 1027-day delay); *Hurns v. State*, 616 So. 2d 313, 317 (Miss. 1993) (denying dismissal despite 334-day delay); *Bailey v. State*, 463 So. 2d 1059, 1063 (Miss. 1985) (denying dismissal despite 298-day delay). Thus, the existence of this presumption, alone, cannot serve as the basis for dismissal of charges against a defendant. *Birkley v. State*, 750 So. 2d 1245, 1250 (Miss. 1999).

¶13. In the case sub judice, Woodall was arrested on February 24, 1997, and indicted on February 25, 1998. Obviously, such a delay is deemed "presumptively prejudicial" in Mississippi. Since that presumption existed, the trial court properly held that the remaining three *Barker* factors should be analyzed to determine whether the State violated Woodall's right to speedy trial.

### (B) REASON FOR DELAY

¶14. The State argues that it delayed indicting Woodall in order to fully investigate the charges against him. The State suggests that this explanation is a valid one; therefore, the trial court improperly weighed this factor against the State. The *Barker* Court noted that "different weights should be assigned to different

reasons [for delay]," commenting that:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531.

¶15. The United States Supreme Court has consistently given prosecutors deferential treatment where their delay arose from further investigation and not deliberate attempts to undermine the defense's efforts, stating that:

> [i]t requires no extended argument to establish that prosecutors do not deviate from "fundamental conceptions of justice" when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.

*United States v. Lovasco*, 431 U.S. 783, 790-91, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977). In *Lovasco*, the Court explained that it afforded prosecutors deference because "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused.'" *Id.* at 795 (quoting *United States v. Marion*, 404 U.S. 307, 324 , 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971).

¶16. This Court has generally followed *Barker* in placing the burden of establishing good cause for delay on the State. *Perry*, 419 So. 2d at 199. Despite that burden, this Court has been hesitant to weigh the delay heavily against the State where the cause lies with a "[tentacle] of the State," such as the State crime lab, rather than with the district attorney's office. *State v. Magnusen*, 646 So. 2d 1275, 1281 (Miss. 1994). In *Magnusen*, this Court declined to hold the State responsible for a five-month delay caused by the State crime lab's inaction. *Id*. at 1281. In that case, it "was not a case of deliberate inaction to delay Magnusen's trial. Moreover, the results of the serology tests could have just as easily been exculpatory as not." *Id*. This Court has recently reaffirmed its view on this matter, holding that "the delay in time attributed to the FBI laboratory in preparing potentially exculpatory DNA evidence weighs very slightly, if at all, in favor of the defendant." *Gray v. State*, 728 So. 2d 36, 48 (Miss. 1998). This Court has also held that mere negligence in causing the delay will be weighed, but only slightly, against the State. *Perry*, 637 So. 2d at 875.

¶17. In the instant case, the State established that the delay was not taken to gain tactical advantage, but rather that it resulted from the slow progress of the Louisiana expert and the replacing of the lost statement of Dr. Woodall. Woodall argued that the State violated his speedy trial right by delaying until the Louisiana handwriting expert completed his supplemental report. In essence, Woodall claimed that, because the handwriting analysis failed to conclusively establish that he had forged these prescriptions, the delay was overly burdensome and unnecessary. The State's decision here, however, can only be characterized as investigative delay. In addition, as *Magnusen* pointed out, the handwriting analysis could have proven

Woodall innocent; and therefore, the delay associated with the review of exemplars should not be weighed heavily against the State.

¶18. The facts also indicate that the loss of Dr. Woodall's statement was neither deliberate nor done in bad faith. As the State suggested, the loss of the statement is, "at worst, mere negligence." Woodall contended that the State should have called Dr. Woodall before the grand jury if the State believed his statement to be so important. Certainly, the State could have done so, but, as cases like *Lovasco*, *Perry*, and *Magnusen* show, such a decision can only lie with the State. The State claimed that, without the statement, it would have had to present its case to the grand jury "without essential preparation." While the State's delay of ten months in obtaining another statement seems excessive, one cannot weigh too heavily its decision to delay the grand jury presentation until informed of exactly what this key witness, who happened to be the defendant's brother, would testify to at the proceeding. As it was Dr. Woodall's prescription pad which had been used to write these alleged forgeries, the State had a legitimate need to determine if Dr. Woodall had any potential criminal liability and to determine whether to offer Dr. Woodall immunity for his testimony.

¶19. In dismissing the charges against Woodall, the trial court explained that it "[found] no reasonable explanation that works to the credit of the State which would justify or mitigate the delay between the arrest and the indictment." Deeming the State's explanation "tenuous at best," the trial court added:

> Certainly, if Dr. Woodall needed to be interviewed or his live testimony transcribed, the grand jury with its attendant powers could have easily addressed the problem. The grand jury has the power to issue a subpoena and Dr. Woodall could have testified before a grant jury at any time during the one year period, if in fact the missing tape [of Dr. Woodall's statement] was really crucial to the State's investigation.

Ultimately, the trial court weighed this factor in favor of Woodall and against the State. In so ruling, the trial court erred in failing to afford the State's explanation the proper weight. Indeed, the court disregarded the discretion afforded prosecutors in cases such as *Lovasco*, *Perry*, and *Magnusen*. Granted, the State had the burden to prove good cause for its delay, and while it did not wholly absolve itself of blame, the State's explanation is much more than "tenuous." The delay here cannot be deemed so unduly burdensome as to cause it to be weighed heavily against the State. At worst, the court below should have weighed the one-year delay only slightly against the State.

## (C) WOODALL'S ASSERTION OF HIS RIGHT TO A SPEEDY TRIAL

¶20. Extremely critical to this issue is the fact that at no time between Woodall's arrest and indictment did Woodall demand a speedy trial. This argument was raised only in his brief on his first appeal to this Court. The trial court failed to give proper weight to Woodall's failure to assert his right to speedy trial. This factor should have been weighed against Woodall and in favor of the State.

¶21. This Court has stressed the importance of a defendant's request for a speedy trial. *Perry*, 419 So. 2d at 199. We have repeatedly held that where a defendant fails to assert his right to speedy trial, that failure must be weighed against him. *Watts v. State*, 733 So. 2d 214, 236 (Miss. 1999); *Stogner v. State*, 627 So. 2d 815, 819 (Miss. 1993).

¶22. The Supreme Court in *Barker* emphasized that "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right"

and that "failure to assert that right will make it difficult for a defendant to prove that he was denied a speedy trial." ***Barker***, 407 U.S. at 531-32. In his concurring opinion in ***Barker***, Justice White, joined by Justice Brennan, attributed the Court's affirmance of Barker's conviction chiefly to the defendant's failure to assert his right to speedy trial, commenting that "it is apparent that had Barker not so clearly acquiesced in the major delays involved in this case, the result would have been otherwise."[(4)] ***Id.*** at 537 (White, J., concurring). The Court, however, stopped short of requiring that the defendant specifically request a speedy trial, cautioning that:

> [w]hether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain.

***Id.*** at 531. As the Court reiterated, a defendant does not automatically and "forever [waive] his right" to speedy trial by not raising the issue, but that "does not mean, however, that the defendant has no responsibility to assert his right." ***Id.*** at 528.

¶23. In the case at bar, Woodall asserted his right to speedy trial only when the State appealed the trial court's first dismissal of this case on statute of limitations grounds. Naturally, upon remand, Woodall moved for a speedy trial hearing wherein he asserted that "there was no means by which [he] could have forced the speedy trial issue." The State disagreed, claiming it received such demands regularly. Ultimately, the trial court dismissed the charges against Woodall, concluding that "a defendant does not waive his right to a speedy trial by failing to assert it. Therefore, this factor . . . [is] equally balanced against both the State and Woodall." While the trial court stands correct in its assertion that a defendant does not waive the right to speedy trial by failure to assert it, the factor should not have been weighed equally. Rather, as ***Watts*** and ***Stogner*** suggest, failure to assert this right in a timely fashion should be held against Woodall. Even though Woodall did not have to raise the matter to preserve his right to speedy trial, Woodall had a duty, according to ***Barker***, to assert this right. Woodall, however, failed to do so in a timely manner and produced no proof to indicate an inability to raise the issue of speedy trial. In fact, Woodall made a number of motions, but not once did he claim any violation of his speedy trial right. As a result of Woodall's failure to raise this issue timely, this factor should have been weighed against him and in favor of the State.

## (D) PREJUDICE TO WOODALL

¶24. Finally, the State claims that Woodall failed to prove any actual prejudice and that, therefore, the trial court improperly weighed the "prejudice" factor in favor of Woodall. While this Court has noted the importance of the prejudice factor and has attempted to protect against the type of problems listed by ***Barker***, we have remained reluctant to uphold dismissal of charges on speedy trial grounds where the defendant suffered no actual prejudice. *Magnusen*, 646 So. 2d at 1284. In ***Magnusen***, this Court found presumptive prejudice from a fifteen-month delay between arrest and trial but no actual prejudice and weighed the "prejudice" factor against the defendant. *Id.* Magnusen offered no proof of extraordinary anxiety or of loss of evidence or witnesses, and this Court declined to "infer prejudice to the defense out of the 'clear blue.'" ***Id.*** Likewise, Woodall has offered no proof of anxiety or loss of evidence or witnesses.

¶25. The State has conceded that, as an attorney, one can assume that, by being accused of these crimes, Woodall suffered some prejudice. Naturally, anyone in Woodall's position would have felt some anxiety;

however, the record is devoid of any evidence of Woodall having suffered actual or excessive anxiety as a result of the State's prosecution of him. Despite the dearth of evidence on this point, the trial court stated that "[f]or two and one-half years Woodall has been forced to live with the anxiety concerning the eventual outcome of his case. Both his professional and private life have been in a constant state of disorder due to the ever present cloud of suspicion which hovers above." Contrary to the trial judge's claim, there is simply no showing in the record that Woodall lost any income, clients, caseload, or respect as a result of the delay. While Woodall, like any defendant, may have experienced some doubts and fear, there is simply no substantial, credible evidence in the record to support the trial court's position on the second *Barker* factor, and this Court should not "infer prejudice to the defense out of the 'clear blue.'" *See Magnusen*, 646 So. 2d at 1284.

¶26. Woodall has also argued that he has been prejudiced by the death of an alleged witness to one of the incidents in the indictment. According to Woodall, the testimony of that witness, John Johnson, would have "refute[d] the State's assertion that [Woodall] was forced to forge prescriptions in order to obtain medication," and, in addition to that, Johnson's testimony "would have contributed credibility to [Woodall's] defense" as Johnson was a former Assistant District Attorney. The State, however, contested this alleged prejudice, noting that there is no proof, beyond the broad, general assertions by Woodall and his attorney, as to what Johnson would have testified to if alive. In its order, the trial court specifically referred to Johnson's death, stating that:

> Woodall's ability to defend against the State's allegations was severely impaired by the deliberate year long delay. A claimed key witness to his defense died on or about January 30, 1998 (one month prior to his indictment). The Witness, John C. "Sonny" Johnson is claimed to be a witness to the delivery of an August 15, 1995 . . . prescription where Woodall's brother, Dr. Woodall, handed Woodall the prescription in the parking lot of Dr. Woodall's office. This could refute allegations that Woodall was forced to forge prescriptions to obtain medication.

The trial court found the State's delay constituted "severe, actual, and exacting prejudice" and weighed this factor in favor of Woodall and against the State.

¶27. While the loss of a key witness can severely prejudice a defendant, unfortunately for Woodall, such is not the case here for two reasons. First, this supposed eyewitness is suspect, as Woodall failed to list Johnson as a witness in discovery. As a result, it is entirely possible that the trial court would have prevented Johnson from testifying. Mississippi Uniform Circuit and County Court Rule 9.04(I) states that the trial court may "exclude the [undisclosed] evidence or grant a continuance" where a defendant fails to provide the prosecution with the names and addresses of all witnesses in chief.

¶28. Second, this case closely resembles *Gray v. State*, 728 So. 2d 36 (Miss. 1998), wherein the defendant's alleged exculpatory witness died before trial began. In that case, the defendant's mother testified that the defendant had informed her that another individual who died prior to the defendant's trial could have testified favorably in the defendant's behalf; however, on cross examination, the defendant's mother admitted that she had no knowledge of what that individual knew or would have said if called as a witness. This Court found the mother's testimony "unfounded" and "[mere] supposition," adding that "[t]here can be no prejudice to the defendant when the possibility is insubstantial, speculative and premature." *Id.* at 49-50. This Court emphasized there that nothing in the record indicated any effort by the defendant or his attorneys to record that alleged witness's testimony and cited previous precedent holding that "the failure to attempt to

secure a witness is fatal to the claim of actual prejudice." *Id.* at 50; s*ee also **Rhymes v. State***, 638 So. 2d 1270, 1274 (Miss. 1994) (holding that "the fact that there was a total failure to attempt to secure [a crucial defense witness'] appearance by subpoena is fatal to the claim of actual prejudice"). This Court denied dismissal of the charges in *Gray* because the defendant failed to prove actual prejudice. *Gray*, 728 So. 2d at 49-50.

¶29. As in that case, Woodall has offered no concrete proof, other than his broad assertions, as to what relevant knowledge Johnson had in this matter. Johnson's supposed testimony remains "speculative" just as that of the witness in *Gray*. As in both *Gray* and *Rhymes*, Woodall failed to secure the testimony of Johnson through deposition, written or recorded statement, or otherwise. Thus, under *Gray* and *Rhymes*, Woodall's prejudice argument lacks merit. The assertions of Woodall and his attorney do not constitute substantial, credible evidence and, as a result, the trial court erred in weighing this factor against the State.

## (E) JOINT CONSIDERATION OF THE FOUR *BARKER* FACTORS

¶30. As *Barker* indicated, each of the four factors, along with any other relevant circumstances, must be considered together in determining whether the State violated the defendant's speedy trial right. *Barker*, 407 U.S. at 533. First, the one-year delay between arrest and indictment gives rise to a presumption of prejudice. Once that presumption arises, the trial court must address the reason for delay, the defendant's assertion of the right to speedy trial, and any prejudice to the defendant. As for the reason for delay, the State established that the delay was not a deliberate, tactical delay, but rather that it was based on the need to further investigate the charges against Woodall before indicting him. The trial court erred in failing to afford the State's explanations the proper weight and in holding this factor strongly against the State. At most, this factor should have been weighed slightly against the State.

¶31. As for the defendant's assertion of the right to speedy trial, Woodall failed to assert his right to speedy trial until the first appeal of the case. The trial court erred in holding this factor weighed equally against both the State and Woodall. Instead, the trial court should have ruled in the State's favor on this issue. Finally, in regard to prejudice, Woodall presented no concrete proof he had suffered anxiety or that his defense would be impaired by the delay. The trial court erred in finding that the death of John Johnson, an alleged witness for Woodall, had resulted in extreme prejudice to Woodall. The sole evidence on this point consisted of the assertions of Woodall and his attorney, but those assertions do not qualify as credible evidence. Thus, the trial court was clearly erroneous in weighing this factor in favor of Woodall.

## CONCLUSION

¶32. When considered as a whole, the record indicates error by the trial court in dismissing the case. While the 366-day delay between arrest and indictment should be weighed slightly against the State, any presumptive prejudice Woodall may have suffered is overwhelmed by his total failure to assert his Sixth Amendment speedy trial right and by the complete absence of actual prejudice. Thus, we reverse the trial court's dismissal of the charges against Woodall. The indictment is hereby reinstated, and we remand the case for trial.

¶33. **REVERSED AND REMANDED FOR TRIAL.**

**PITTMAN, C.J., WALLER, COBB, EASLEY AND CARLSON JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. McRAE,**

P.J., NOT PARTICIPATING.

DIAZ, JUSTICE, DISSENTING:

¶34. I respectfully disagree with my colleagues because I believe the trial court's findings were based on substantial evidence, and I believe the trial court was not clearly erroneous in applying the factors of ***Barker v. Wingo***, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972). I would affirm the decision of the trial court that Woodall's right to a speedy trial has been violated. Specifically, I disagree with the majority's analysis of the four factors set forth in *Barker*.

## 1. Length of Delay

¶35. I agree with the majority that the length of delay, over a year, triggered an analysis of the remaining *Barker* factors. Woodall was arrested on February 24, 1997, and not indicted until February 25, 1998.

## 2. Reason for Delay

¶36. The majority rules in favor of the State under this factor because it believes the State had good cause for the delay. The State tries to justify its delay by arguing that the delay resulted from the slow progress of the Louisiana expert in providing a supplemental handwriting report and the replacing of the lost statement of Dr. Woodall. I disagree with the majority that the delay was necessary to complete an investigation of Woodall.

¶37. The first handwriting report failed to confirm that Woodall's handwriting appeared on the forged prescriptions. The State, not satisfied with this report, asked for a supplemental report. This report, not received until November 13, 1997, also failed to establish that Woodall forged the prescriptions. Perhaps, if the first report had established that Woodall committed forgery, there would have been no need for a supplemental report, and no unnecessary delay of Woodall's indictment. I would find that the State's investigation of the handwriting unnecessarily delayed Woodall's trial because the first report should have been conclusive as to the handwriting. The State's hope that a second report might confirm a forgery was unnecessary and only caused further delay.

¶38. Also, I find the State's excuse that it lost Dr. Woodall's statement to be inadequate. If the State were excused for investigative delay every time it lost a document, then the right to a speedy trial would be virtually non-existent. Furthermore, the statement was not re-recorded until December, 1997.

¶39. I also believe the State's reliance on *State v. Magnusen*, 646 So.2d 1275 (Miss. 1994), is misplaced. In that case, the prosecution waited for the state crime lab to return the results of a "rape protocol." After fifteen months, the only result returned by the crime lab was a hair analysis that linked Magnusen to the rape. None of the seriological work had been performed. This Court held this explanation to be sufficient to justify the delay. In the instant case, however, the only evidence the investigators were waiting for was cumulative. They had already obtained a statement from Dr. Woodall and a handwriting analysis. Nothing new transpired between the State's receipt of that evidence and the indictment.

¶40. In dismissing the charges against Woodall, the trial court explained that it "[found] no reasonable explanation that works to the credit of the State which would justify or mitigate the delay between the arrest and the indictment." Deeming the State's explanation "tenuous at best," the trial court added:

Certainly, if Dr. Woodall needed to be interviewed or his live testimony transcribed, the grand jury with its attendant powers could have easily addressed the problem. The grand jury has the power to issue a subpoena and Dr. Woodall could have testified before a grant jury at any time during the one year period, if in fact the missing tape [of Dr. Woodall's statement] was really crucial to the State's investigation.

¶41. The State argues that the trial court erred because without the taped statement, it would have had to grant immunity to Dr. Woodall for his testimony before the grand jury, and its case would be presented "without essential preparation" because it did not know what the doctor would say. This argument is disingenuous since the State had previously recorded the statement of Dr. Woodall. The investigators learned what he would say when they took the first statement.

¶42. Furthermore, Investigator Pat Pope conceded at trial that the State had no more evidence against Woodall in February, 1998, than it did when it arrested him in February, 1997. If anything, at the end of this "investigation," prosecutors had less reason to believe in Woodall's guilt, as two handwriting reports failed to inculpate him. I believe the State failed to carry its burden of showing good cause for the delay. I would hold that the trial court properly weighed this factor in favor of Woodall.

### 3. Woodall's Assertion of His Right to Speedy Trial

¶43. The majority holds that the trial court erred in failing to give proper weight to Woodall's failure to assert timely his speedy trial right and in weighing this factor equally between the State and Woodall. The majority quotes *Barker*, stating that the failure to assert the right to a speed trial "will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531-32. However, the Court in *Barker* also stated that a defendant does not automatically waive his right to speedy trial by failing to raise the issue, but that "does not mean, however, that the defendant has no responsibility to assert his right." *Id.* at 528.

¶44. This Court has stressed the importance of a defendant's request for a speedy trial. In *Jaco v. State*, 574 So. 2d 625, 632 (Miss. 1990), Steve and Jerry Jaco did not raise the speedy trial issue until one day before their trial. This Court noted that "an accused has no duty to bring himself to trial." *Id. See also* *Brengettcy v. State*, 794 So. 2d 987, 994 (Miss. 2001). However, this Court went on to hold that the accused gains far more points under this prong of the *Barker* test where he has demanded a speedy trial. The question is how does a defendant who has only been arrested but not indicted assert a "speedy trial" request? Likewise, in *Flores v. State*, 574 So.2d 1314, 1321 (Miss. 1990), this Court held that "[t]he State must assume that a defendant wants a speedy trial unless the defendant maintains otherwise. This obligation remains with the State because the defendant has no duty to bring himself to trial." *Id.*

¶45. As the majority points out, Woodall asserted his right to speedy trial only when the State appealed the trial court's dismissal of this case on statute of limitations grounds. On remand, Woodall moved for dismissal of the charges due to a violation of his right to a speedy trial. The trial court granted the motion, concluding that "a defendant does not waive his right to a speedy trial by failing to assert it." The majority stresses that where a defendant fails to assert his right to speedy trial, that failure must be weighed against him. The fact remains that Woodall did assert his right to a speedy trial, but had no real reason to assert that right until the State appealed the trial court dismissal of Woodall's case. Regardless of when the defendant actually asserted his right to a speedy trial, the State's duty to provide Woodall a speedy trial was constant. The burden was on the State to bring Woodall to trial in a timely manner or to have him indicted after he

was arrested. Under the circumstances, Woodall was under no duty to bring himself to trial. I disagree with the majority that this factor should be weighed in favor of the State.

### 4. Prejudice to Woodall

¶46. The majority finds that Woodall suffered no actual prejudice and that this factor weighs in favor of the State. I disagree. As the trial court stated, the State's delay constituted "severe, actual, and exacting prejudice." I agree with the trial court. Rule 6(a) of the Rules of Discipline requires any attorney convicted of a felony to be disbarred from the practice of law. Since his arrest in 1997, Woodall has been facing numerous felony charges, a conviction for any one of which would end his legal career.

¶47. Furthermore, Woodall's defense was impaired when one of his defense witness, John C. "Sonny" Johnson, died approximately one month before the indictment. Woodall argues that Johnson was prepared to testify to witnessing Dr. Woodall handing a prescription to Woodall in the parking lot of his medical practice on August 15, 1995. According to Woodall, Johnson's testimony would have "refute[d] the State's assertion that [Woodall] forged prescriptions in order to obtain medication but Johnson, as a ex-assistant district attorney, would have contributed credibility to Appellee's defense."

¶48. This is the exact type of prejudice that a speedy trial is intended to prevent. In stressing the importance of this third concern, the U.S. Supreme Court explained:

> Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious.

*Barker*, 407 U.S. at 514. *See also Jaco v. State*, 574 So. 2d at 632.

¶49. *Gray v. State*, 728 So.2d 36 (Miss. 1998), and *Rhymes v. State*, 638 So.2d 1270 (Miss. 1994), are both distinguishable from the case before us. In *Gray*, the defendant argued that his defense was prejudiced when a key witness died. The only evidence he offered on this point was the testimony of his mother, who said that he told her the witness could exculpate him. She admitted that she had no idea what the substance of the testimony would be, and we held this to be nothing more than conjecture. *Gray*, 728 So. 2d at 49-50. In *Rhymes*, the defendant argued that a witness, who was also the defendant's brother, was unavailable to testify. The witness was not deceased or otherwise physically unable to testify; he was just absent. This Court held that the failure of the defendant to produce his own witness defeated the claim of prejudice resulting from the absence. *Rhymes*, 638 So. 2d at 1274.

¶50. In contrast, here Johnson died approximately one month before the indictment. It is unreasonable to argue that Woodall had a duty prior to his indictment to depose witnesses in case of their accidental death. It is equally obvious that a subpoena cannot compel the testimony of a dead man. I would affirm the trial court's finding that the State's delay resulted in "severe, actual, and exacting prejudice," as it was based on substantial evidence.

### 5. The Four Factors Considered Together

¶51. Taken as a whole, the record before this Court reveals no clear error by the trial court in dismissing the case, as its decision was based on substantial evidence. The State has failed to adequately justify the delay between arrest and indictment, and has failed to rebut the presumption of prejudice to Woodall. I find that

the trial court correctly held that the weight of the *Barker* factors favors Woodall.

¶52. As this Court has ruled, dismissal stands as the sole remedy for a violation of the right to speedy trial. ***Bailey v. State***, 463 So. 2d 1059, 1064 (Miss. 1985). In the case at bar, I believe the trial court correctly weighed the *Barker* factors to find that Woodall's Sixth Amendment right to speedy trial had been violated, and was therefore correct in dismissing the indictment against Woodall.

¶53. A one-year delay between Woodall's arrest and indictment was presumptively prejudicial. I would hold that because the State failed to show good cause for the delay, and because Woodall suffered prejudice as a result, the circuit court properly granted his motion to dismiss for violation of his constitutional right to a speedy trial. The decision of the circuit court was based on substantial evidence and not clearly erroneous. I, therefore, respectfully dissent.

### GRAVES, J., JOINS THIS OPINION.

1. It appears that the exemplars were not sent to the State crime lab due to previous problems the lab had experienced when dealing with Woodall.

2. The five incidents serving as the basis for the indictment occurred between August 18, 1995, and September 16, 1995.

3. The Mississippi Constitution of 1890 also guarantees the right to a speedy trial. Miss. Const., art. 3, § 26.

4. Although Barker had been indicted on September 15, 1958, the Commonwealth of Kentucky requested and received 11 continuances, without objection from Barker, from October 21, 1958, to February 12, 1962. *Barker*, 407 U.S. at 516-17. When the State moved for a twelfth continuance on February 12, 1962, Barker finally objected, but still did not raise his right to speedy trial. *Id.* at 517.