# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00606-COA

**LYDIA MARTINEZ**                                             **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/26/2021 |
| TRIAL JUDGE: | HON. LEE SORRELS COLEMAN |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/09/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1. Lydia Martinez was accused as a principal in the murder of her son-in-law, Manuel Vasquez. Following a jury trial, she was convicted of first-degree murder and was sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Lydia appeals her conviction alleging a violation of her right to a speedy trial, a violation of her right to trial in a proper venue, and a failure by the trial court to provide a sufficient record for her appeal. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Lydia was initially indicted by a Lowndes County grand jury on one count of

accessory after the fact to murder. She was originally indicted for assisting her daughter, Christina Martinez (Christina), in destroying the body of Christina's husband, Manuel Vasquez, knowing that Christina had murdered Manuel after growing discord and disputes over family issues within the household where they all three lived. The case was continued by agreement of the parties a multitude of times over the next four years. Lydia was then indicted again—this time for the first-degree murder of Manuel. Lydia's trial on the murder charge was subsequently delayed due to changes in defense counsel and the COVID-19 pandemic. In December 2020, the Lowndes County Circuit Court transferred venue of the murder charge to Oktibbeha County and set the trial for March 2021. During the course of trial, evidence placed before the jury included two separate statements by Lydia confessing to shooting and killing Manuel and disposing of his remains by burning his body in a barrel outside of their house and spreading the remnants in the yard. The jury also heard testimony that in the course of their investigation after Manuel was reported missing by his mother, officers went to conduct questioning at their residence and arrived to find Lydia attempting to commit suicide in her bedroom by drinking antifreeze and slashing her wrists. Her fingerprints were also located on a suicide note next to the bed, and in the note, she confessed to killing Manuel. Finally, expert testimony confirmed that DNA evidence from a burn pile on the property matched the victim. Following a trial in the Oktibbeha County Circuit Court, a jury found Lydia guilty of first-degree murder.

¶3.     Thereafter, Lydia filed a post-trial motion for a new trial raising, among other things, a challenge to the lack of a speedy trial. At a hearing on the motion, her counsel argued that

2

she was prejudiced by the delay in bringing her to trial (in both cases of the 2015 indictment for accessory after the fact to murder and the 2019 indictment for first-degree murder) because of failing recollections of witnesses. This was despite the fact that all continuances were requested by or agreed to by Lydia. The trial court denied the motion. Aggrieved, Lydia appeals.

## DISCUSSION

¶4.     Lydia raises three claims on appeal. She argues that her Sixth Amendment right to a speedy trial was violated, that her Sixth Amendment right to a trial in the county where the crime was committed was violated, and that the trial court erred by failing to provide a complete record for her appeal.

### I.     The right to a speedy trial was not violated.

¶5.     The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. "[T]he United States Supreme Court established a four-part balancing test to decide whether . . . a criminal defendant has been denied [her] Constitutional right to a speedy trial" in *Barker v. Wingo*, 407 U.S. 514 (1972). *Hall v. State*, 984 So. 2d 278, 282 (¶8) (Miss. Ct. App. 2006). "The Mississippi Supreme Court has adopted the *Barker* test, which provides that 'the trial judge is to balance: (i) length of delay, (ii) the reason for the delay, (iii) the defendant's assertion of his right, and (iv) prejudice to the defendant.'" *Lewis v. State*, 374 So. 3d 529, 552 (¶90) (Miss. Ct. App. 2023) (quoting *Hall*, 984 So. 2d at 282 (¶8)), *cert. denied*, 375 So. 3d 672 (Miss. 2023), *pet. for cert.*, No. 23-7089 (U.S. Feb. 27, 2024). "In weighing the *Barker*

3

factors, we must consider the 'totality of the circumstances,' and 'no one factor is dispositive.'" *Berryman v. State*, 337 So. 3d 1116, 1131 (¶53) (Miss. Ct. App. 2021) (quoting *Price v. State*, 898 So. 2d 641, 648 (¶11) (Miss. 2005)). "Where the trial court does not articulate findings of fact, this Court 'acts de novo in performing the *Barker* analysis.'" *Lewis*, 374 So. 3d at 552 (¶91) (quoting *DeLoach v. State*, 722 So. 2d 512, 516 (¶15) (Miss. 1998)). Thus, because the trial court did not make findings on the record, this Court will review the *Barker* factors de novo for Lydia's claim.

### A.    Length of Delay

¶6.    "A 'presumptively prejudicial delay' acts as a triggering mechanism for the balancing test set out" in *Barker*. *Lewis*, 374 So. 3d at 551-52 (¶90) (quoting *Ward v. State*, 346 So. 3d 868, 871 (¶6) (Miss. 2022)). Mississippi caselaw holds that "[a]n eight-month delay is presumptively prejudicial." *Harris v. State*, 311 So. 3d 638, 664 (¶78) (Miss. Ct. App. 2020). "In calculating the length of delay for a constitutional speedy-trial claim, the clock begins to run once a person has been accused. This can be when there is a formal indictment or information, or when a person has been arrested." *Id*. (quoting *Brown v. State*, 285 So. 3d 671, 681 (¶41) (Miss. Ct. App. 2019)). The delay between Lydia's arrest and her trial was approximately sixty-seven months. Thus, the delay of her trial was presumptively prejudicial, but

> [a] presumptively prejudicial delay does not, however, automatically equate to "actual prejudice." "Actual prejudice" is determined later in the *Barker* analysis. Presumptive prejudice "simply marks the point" where the court must then consider the remaining *Barker* factors, and the burden is shifted to the State to show good reason for delay.

4

*Galloway v. State*, 122 So. 3d 614, 650 (¶103) (Miss. 2013) (quoting *Johnson v. State*, 68 So. 3d 1239, 1242 (¶7) (Miss. 2011)).

## B.     Reason for Delay

¶7.     "Once a delay is found to be presumptively prejudicial, the court must determine whether the delay should be charged to the State or the defendant." *Harris*, 311 So. 3d at 664-65 (¶79) (quoting *Sullivan v. State*, 281 So. 3d 1146, 1164 (¶45) (Miss. Ct. App. 2019)). "[T]he State must prove either that the defendant prompted the delay or that the State had good cause." *Berryman*, 337 So. 3d at 1127 (¶36) (quoting *De La Beckwith v. State*, 707 So. 2d 547, 606 (Miss. 1997)). "Different reasons for delay are assigned different weights." *Id*. In Lydia's case, we will chronologically delineate three distinct time periods and reasons for the delay between her initial arrest and trial.

### 1.     First Delay – Before First Indictment

¶8.     The first period of delay occurred after Lydia was arrested on suspicion of murder and before she was initially indicted by a grand jury. This period of delay was approximately four months, from July to November 2015. In discussing the lapse of time prior to presentment to a grand jury, we have stated,

> [I]t requires no extended argument to establish that prosecutors do not deviate from "fundamental conceptions of justice" when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.

*Harris*, 311 So. 3d at 665 (¶80) (quoting *State v. Woodall*, 801 So. 2d 678, 682 (¶15) (Miss.

5

2001)). The lapse of time between an arrest and indictment is considered an "investigatory delay" and weighs only slightly against the State. *See Lewis*, 374 So. 3d at 553 (¶95). "Investigative delay is fundamentally unlike delay undertaken by the government solely to gain tactical advantage over the accused." *Harris*, 311 So. 3d at 665 (¶80) (quoting *Woodall*, 801 So. 2d at 682 (¶15)). Thus, this four-month delay weighs only slightly against the State in this case.

### 2.    Second Delay – Before Second Indictment

¶9.    In October 2019, a grand jury returned a second indictment against Lydia for the charge of first-degree murder arising from the same underlying facts of Manuel's death as the first indictment.[1] During the interim period of over three years between the first and second indictments, she (through counsel) sought or agreed to fourteen orders of continuance for her trial on the accessory charge through November 12, 2019.

¶10.    The record demonstrates that each of the fourteen orders were signed by both the State and Lydia's defense counsel. "Agreed continuances are weighed against the defense." *Courtney v. State*, 275 So. 3d 1032, 1042 (¶29) (Miss. 2019). The "[defendant] is bound by [her] lawyer's decisions as to the timing of trial and the need for a continuance." *May v. State*, 285 So. 3d 639, 649 (¶30) (Miss. Ct. App. 2019). "In the course of attributing delays caused by defense counsel to the defendant for speedy-trial purposes, when an attorney-client relationship exists, the client may not pick and choose which of his attorney's actions shall

---

[1] The new indictment against Lydia for the charge of first-degree murder was filed after Christina entered a plea deal with the State and pled guilty to second-degree murder in September 2019.

bind him." *Id*. Thus, because all fourteen orders and forty-two months of delay were agreed to by both parties, they are counted against the defendant for speedy trial purposes. This period of delay between indictments weighs in the State's favor.

### 3. Third Delay – After the Second Indictment

¶11. The third period of delay occurred after the State filed the new indictment against Lydia charging her with first-degree murder for her role in Manuel's death. The second indictment was filed with the trial court in October 2019, the month before Lydia was scheduled to stand trial on the accessory charge. But the indictment was not able to be served, and the capias was not able to be executed, until November 21, 2019.[2] Once she was served and taken into custody, she was denied bail due to her failure to appear, and trial was set on the murder charge for a date in February 2020. Subsequently, the record includes an order of continuance based on a defense motion to withdraw as counsel and two continuances due to the COVID-19 pandemic. The next filing that appears in the record is an order setting a trial date in a different venue, stating it was agreed upon by the parties and based on a speedy trial demand from Lydia. The court set trial for March 15, 2021, in Oktibbeha County. Although not specifically labeled as a continuance, the nature of the order resulted in Lydia's trial being delayed another three and a half months. Lydia ultimately stood trial on March 15, 2021, as scheduled, for the charge of first-degree murder.

¶12. "[D]elays caused by the withdrawal of defense counsel 'cannot be weighed against

---

[2] A bench warrant was issued for Lydia on November 14, 2019, indicating she had not appeared on November 12, 2019, for her re-scheduled trial and that the delay between November 12, 2019, and November 21, 2019, was due to Lydia's actions alone.

the State.'" *Berryman*, 337 So. 3d at 1128-29 (¶41) (quoting *Wiley v. State*, 582 So. 2d 1008, 1012 (Miss. 1991)). Also, the resulting delay from the COVID-19 pandemic is not weighed against either party. *See* Emergency Administrative Order–2, *In re Emergency Order Related to Coronavirus (COVID-19)*, No. 2020-AD-00001-SCT (Miss. Mar. 15, 2020) (authorizing judges "to postpone any jury trials . . . scheduled through May 15, 2020"); *see also Berryman*, 337 So. 3d at 1129 (¶44) ("No trials could be held during the next scheduled term of court in April 2020 because MDOC was not transporting prisoners due to the COVID-19 pandemic."). In the period after Lydia's second indictment was filed, a large majority of the delay is charged to Lydia or due to COVID-19. Thus, this period of time weighs in the State's favor too.

¶13.   Viewing the record as a whole, a vast majority of the time between Lydia's arrest in July 2015 and her eventual trial in March 2021 is contributed to the defense and weighs against Lydia for purposes of a speedy trial violation. Therefore, this *Barker* factor weighs in favor of the State.

### C.   Assertion of the Right

¶14.   "Although it is the State's duty to ensure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right." *May*, 285 So. 3d at 650 (¶33) (quoting *Bateman v. State*, 125 So. 3d 616, 630 (¶48) (Miss. 2013)). For the defendant,

> [a]n assertion of that right is a demand for a speedy trial, which will generally be an objection to a continuance or a motion asking to go to trial. At the very least, a defendant's assertion of his speedy trial rights should manifest "his desire to be tried promptly."

*Rowsey v. State*, 188 So. 3d 486, 495 (¶28) (Miss. 2015) (quoting *Franklin v. State*, 136 So.

8

3d 1021, 1035 (¶52) (Miss. 2014)). "When a defendant moves for a speedy trial but simultaneously requests a continuance, the defendant's speedy-trial request cannot be viewed as a request to be tried promptly." *Courtney*, 275 So. 3d at 1043 (¶33) (quoting *Perry v. State*, 233 So. 3d 750, 758 (¶17) (Miss. 2017)). In other words, where the "speedy-trial demand is coupled with requests for continuances by the defense, it loses effect as a request to go to trial." *Id*. Furthermore, this "factor weighs against a defendant who waits a significant amount of time after arrest to demand a speedy trial." *Id*. at 1043 (¶32).

¶15.    Here, Lydia filed a demand for a speedy trial in the proceedings against her. But her demand asserting the right came nearly four years and nine months after she was initially arrested, four years and five months after her first indictment, and five and a half months after her second indictment. At the time she filed her demand, the trial on her first-degree murder charge was already scheduled and was in fact set to occur less than a month later. Also, after she filed her demand, she agreed to two continuances, agreed to a change of venue that in turn pushed back her trial date, and filed two more unsuccessful motions requesting further continuances. This factor weighs only very slightly in Lydia's favor for asserting the right.

### D.    Prejudice

¶16.    "If a defendant is to win the fourth prong of the *Barker* analysis, he must show that he, or his defense, suffered some type of prejudice." *Giles v. State*, 306 So. 3d 830, 838 (¶22) (Miss. Ct. App. 2020) (quoting *Johnson*, 68 So. 3d at 1244 (¶15)). "*Barker* held that the denial of a speedy trial may result in prejudice when the interests protected by the

speedy-trial right are impacted by the delay." *Perry*, 233 So. 3d at 758-59 (¶19). "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. 1, 8 (1982). The prejudice that the final *Barker* prong was intended to protect "encompasses two aspects: actual prejudice in defending the case and interference with the defendant's liberty." *Bateman*, 125 So. 3d at 631 (¶51).

¶17. "To determine whether the delay resulted in actual prejudice, the Court considers three interests that the right to a speedy trial was meant to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *May*, 285 So. 3d at 651 (¶38) (quoting *Taylor v. State*, 162 So. 3d 780, 787 (¶16) (Miss. 2015)). Lydia "bears the burden of showing actual prejudice, since the defendant is clearly in the best position to show prejudice under this prong." *Id*. (quoting *Reed v. State*, 191 So. 3d 134, 141 (¶19) (Miss. Ct. App. 2016)).

¶18. To be clear, Lydia does not argue that she endured oppressive pre-trial incarceration. Rather, she makes the bare assertion that "disruptions to life and anxiety have been long recognized as prejudicial." "[T]he Mississippi Supreme Court has held that a defendant fails to establish actual prejudice by simply repeating the factors to be considered with nary a scintilla of evidence to support his claims." *Id*. at 651 (¶39) (quoting *Collins v. State*, 232 So. 3d 739, 746 (¶27) (Miss. Ct. App. 2017)). Thus, Lydia's generalization does not establish

10

actual prejudice for a speedy trial violation due to her incarceration.

¶19.    Lydia also alleges that she "suffered an immensely prejudicial consequence in the delay." She argues that her rights were violated because the charges against her were changed from accessory after the fact of murder to first-degree murder. Although she fails to identify supporting caselaw, her claim relies on the argument that because the State had not brought her to trial on the accessory charge in a timely manner, the State was able to file a more severe charge against her with a significantly harsher penalty. In other words, she complains that her rights were violated because upon conviction, she was confronted with a harsher penalty than she would have had with her initial charge and because she was faced with a charge that the State would not have otherwise been allowed to charge her with had she been convicted of accessory after the fact as originally charged. However, "[i]f the defendant is the cause of the delay, he cannot complain thereafter." *Lewis*, 374 So. 3d at 556 (¶113) (quoting *Simmons v. State*, 678 So. 2d 683, 685 (Miss. 1996)). Lydia cannot now succeed when her trial delays were due to agreed orders of continuance she either joined or filed, a change of venue, and last-minute motions filed on her behalf.[3]

¶20.    Lydia further claims prejudice by alleging witnesses were unable to recall events of the case surrounding Manuel's death. "Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation." *Berryman*, 337 So. 3d at 1130

---

[3] Lydia's specific argument about the change in the charges against her does not allege prejudice due to pre-trial incarceration, impairment of liberty while on bail, or the disruption of life caused by arrest or unresolved charges. The "disruption" she allegedly suffered was solely a variance in the extent of the sentence she would face if she were to be convicted.

(¶47) (quoting *McCormick v. State*, 183 So. 3d 898, 903 (¶21) (Miss. Ct. App. 2015)). We examine "whether witnesses have died or become unavailable, documents or other evidence have been destroyed, or memories have dimmed so that the accused is at a disadvantage which would not have attended him at a prompt trial." *Galloway*, 122 So. 3d at 651 (¶106).

¶21. Lydia's claim on appeal fails to identify any specific witness or any specific testimony that was affected by the passage of time. Instead, she makes generalized allegations that there were "separate times witnesses could not recall salient facts" and that "[t]he prosecutor asked the witness if they remembered various events and times in question after question, a clear acknowledgment that the witness would have valid reason[s] to not remember." Lydia "basically reasserts that the delay in [her] case was presumptively prejudicial, but [she] offers no proof to substantiate [her] assertions or to show specifically how [she] or [her] defense was prejudiced by the delay in trial." Our supreme court has found this to be insufficient to prove prejudice. *Giles*, 306 So. 3d at 838 (¶23); *see also Berryman*, 337 So. 3d at 1130 (¶51) ("[T]he supreme court held that a defendant failed to establish prejudice because he 'offered no concrete proof, other than his broad assertions, as to what relevant knowledge a deceased witness had in the matter' or what the deceased witness 'would have testified to if alive.'" (quoting *Woodall*, 801 So. 2d at 686-87 (¶¶26, 29))). In this case, "[t]he absence of actual prejudice 'weighs heavily against the defendant and in favor of the State.'" *Berryman*, 337 So. 3d at 1131 (¶52) (quoting *DeLoach*, 722 So. 2d at 518 (¶23)).

¶22. In sum, "[w]here, as here, the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of

12

rejecting the defendant's speedy trial claim." *Lewis*, 374 So. 3d at 557 (¶115) (quoting *Taylor*, 162 So. 3d at 787 (¶17)). Balancing the *Barker* factors, we find that Lydia's right to a speedy trial was not violated.

## II.     No violation of rights resulted from the trial venue.

¶23.    The second issue Lydia raises on appeal is that her Sixth Amendment right to a trial in the county where the crime was committed was violated. She argues that "[t]he record is barren of any indication that Lydia understood her constitutional right, and that she then knowingly waived it" and agreed to a change of venue to Oktibbeha County. Lydia alleges that the trial court in Oktibbeha County lacked jurisdiction to try her case and that her conviction therefore should be reversed.

¶24.    "[I]n Mississippi 'the accused shall have a right to . . . a speedy and public trial by an impartial jury of the county where the offense was committed.'" *Lewis*, 374 So. 3d at 541 (¶30) (quoting Miss. Const. art. 3, § 26). "But there are reasons defendants may not want to be tried in that county, despite their right to it. For instance, a defendant may feel that he or she cannot receive a fair trial there, whether due to publicity or for some other reason." *Id*. at 541 (¶31). "A change of venue is at 'the discretion of the trial court, and its ruling thereon will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case.'" *Hall v. State*, 295 So. 3d 544, 552 (¶10) (Miss. Ct. App. 2019) (quoting *Davis v. State*, 196 So. 3d 194, 198 (¶17) (Miss. Ct. App. 2016)).

¶25.    Two pieces of evidence in the record shed light on the change of venue in this case.

First is an order entered by the Lowndes County Circuit Court that states:

> THIS MATTER is before the Court, to set the above styled and numbered cause for trial . . . **and the Court being advised that the parties have agreed to a venue of Oktibbeha County**, Mississippi, finds that this matter should be set for trial on a date certain on the soonest possible available date in Oktibbeha County, Mississippi.

(Emphasis added). Second, in the transcripts from the hearing on the February 26, 2021 motion for a continuance, referring to defense counsel, the prosecutor stated:

> So by October, he would have been aware of that, and so, on December 4th, 2020 -- there was a lot of back and forth between him and the court administrator and myself about getting a trial date and whether he was going to want to have a special setting in another county because of the fact that the Court had granted Christina Martinez a special venue based on the publicity around the case. So I assumed I needed to make a good faith effort to try to accommodate Ms. Lydia Martinez because -- you know, in case the Court made a similar finding. And so, we agreed in December to try the case in March of 2021 in Oktibbeha County knowing that that was going to require a special setting with summons and all that.

Notably, the record is devoid of any evidence showing Lydia voiced disagreement with either of the two recitations of her agreement or raised concerns regarding the change of venue at any point before trial. More importantly, she also did not allege in any of her post-trial motions that the venue was improper or that the change of venue violated her rights. As such, given our limited standard of review, we cannot find that trial court abused its discretion when it changed the venue for Lydia's trial.

### III.     The issue of an incomplete record is moot.

¶26.    The last issue Lydia raises on appeal is that the trial court erred by failing to provide a complete record for her appeal. Specifically, she argues that the case file on the original charge of accessory after the fact exists but was not made part of the record and should have

14

been for the purpose of her speedy trial claim.

¶27. For background, we note that as of the date Lydia originally filed her appellant's brief, her requests for supplementation of the record filed with the trial court had not yet been satisfied. However, in the time between the filing of her appellant's brief and the case's submission without oral argument, supplementation of the record was completed. Thus, this Court had the record related to her original 2015 indictment for the charge of accessory after the fact of murder. In her rebuttal or reply brief filed after supplementation of the record was complete, Lydia re-urges her initial complaints regarding the record adding emphasis to her speedy trial claim in light of supplemented motions of the State to continue her trial dates. However, as discussed previously, Lydia joined in seeking these continuances. Nonetheless, the supplementation she requested is now complete and before this Court. Our caselaw holds, that appellate review "should not be allowed for the purpose of settling abstract or academic questions, and . . . we have no power to issue advisory opinions." *State v. Runnels*, 281 So. 3d 148, 151 (¶7) (Miss. Ct. App. 2019) (quoting *Fails v. Jefferson Davis Cnty. Pub. Sch. Bd.*, 95 So. 3d 1223, 1225 (¶10) (Miss. 2012)). The issue of an incomplete record in this matter is moot.

## CONCLUSION

¶28. After considering the totality of the circumstances under the *Barker* analysis, Lydia has not successfully demonstrated a violation of her constitutional right to a speedy trial. The record reflects that Lydia joined or caused the continuances that delayed her trial; she nullified her request for a speedy trial by requesting additional continuances after making it;

15

and she offers no relevant argument on appeal that the delay prejudiced her. Turning to her alleged violation of the right to venue in the county where the crime occurred, Lydia failed to provide evidence that the change of venue was improper. Finding no merit in the arguments she presents on appeal, we affirm the conviction and sentence.

¶29.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**