817 So.2d 644 (2002)
William Ray COLLINS and Ervin Winters a/k/a Ervin Ray Winters, Appellants
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01878-COA.
Court of Appeals of Mississippi.
May 28, 2002.
*648 Rodney D. Robinson, Gulfport, Tom Sumrall, Carl L. Souser, attorneys for appellants.
Office of the Attorney General by Jeffrey A. Klingfuss, Jackson, attorney for appellee.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. William Ray Collins and Ervin Winters were convicted of armed robbery. Both appeal arguing that their rights to a speedy trial were violated, that racial bias occurred during jury selection, that several items of evidence were improperly admitted, that there was insufficient evidence to support the verdict, and that the verdict was against the overwhelming weight of the evidence. Winters additionally argues that his motions for severance and mistrial should have been granted, and that he was improperly sentenced. We disagree with all allegations and affirm.

STATEMENT OF FACTS
¶ 2. Two men dressed in black and wearing gloves and ski masks entered a branch of People's Bank in Gulfport. It was midmorning on a November 1998 day. One of the men vaulted over the counter and through the framed opening at a teller's station. The teller, Susan Danko, saw a flash of black, was thrown backwards into a file cabinet, and became unconscious for several seconds. Once she revived, Danko saw an individual dressed in black taking money out of her teller drawer and placing it in a bag similar to those used by the bank. Danko was "pretty sure" that she saw a gun and thought it similar to a Glock automatic or semi-automatic. The robbery was recorded by video cameras inside and outside the bank and also by still-camera photographs.
*649 ¶ 3. The other masked individual entered the office of the bank's loan officer, Brennon Johnson. Johnson was told to get down on the floor and was then struck on the head with a desk drawer. Nothing was taken from Johnson's office.
¶ 4. The two masked individuals fled the bank with over three thousand dollars in cash. One of the men got into a black Pontiac Grand Prix driven by a thirteen-year-old boy. Several individuals outside of the bank became aware of the robbery and gave police a description of the Pontiac. Several minutes later that car was stopped by police. The only occupant of the car by this time was the young teenager. Cash was in both the front and back of the car. A black ski mask was found but no gun.
¶ 5. The teenage driver later identified the two masked individuals as William Ray Collins and Ervin Winters. The automobile was owned by the teenager's mother. His mother had a romantic relationship with Winters. Winters was arrested the next day. Collins was arrested in Georgia two months later.
¶ 6. Both men were indicted for armed robbery. After a three-day trial, both were found guilty. Their appeals were deflected here by the Supreme Court. Miss.Code Ann. § 9-4-3 (Supp.2001).

DISCUSSION

1. Speedy Trial
¶ 7. Both defendants claim that their right to a speedy trial was violated. Collins asserted in pre-trial and post-trial motions that his constitutional and statutory rights to a speedy trial were violated. Winters only raised the constitutional right in his pre-trial motions, but in a post-trial motion he also asserted the statutory right. Neither Collins nor Winters discusses the statutory right in his brief.
The following is a chronology of pre-trial events.
11/09/1998 Date of the Armed Robbery.
11/10/1998 Winters arrested.
11/11/1998 Winters makes his initial appearance.
12/02/1998 District Attorney receives Winters' pro se motion for bond relief.
12/14/1998 Winters makes pro se motion for writ of habeas corpus seeking reduction of bond.
12/28/1998 Winters makes pro se motion to proceed In Forma Pauperis filed with the Mississippi Supreme Court with attached motion for habeas corpus relief.
01/19/1999 Collins is arrested and extradited from Georgia.
02/09/1999 Winters makes a demand for a speedy trial by his attorney Kay Wilkerson.
05/05/1999 Collins makes a demand for a speedy trial (constitutional right).
05/14/1999 Winters files notice and motion for bond relief.
06/14/1999 Winters bond motion set for hearing but not heard. Reset for 06/18/1999.
06/18/1999 Winters bond motion reset to 06/28/1999.
06/28/1999 Winters motion for reduction of bond is denied.
07/15/1999 Indictment is filed.
07/20/1999 Scheduling Order is entered.
07/23/1999 Collins' attorney, David Powell, signs for and receives discovery.
07/31/1999 Capias served on each defendant.
08/02/1999 Collins' attorney, David Powell, signs for and receives discovery.

*650 08/04/1999 Felicia Burkes substituted as counsel for Winters.
08/06/1999 Scheduling order is entered.
08/09/1999 Collins set for trial on burglary charge. Trial is reset to 10/18/1999 with armed robbery charge because Collins' attorney is not ready. Circuit court granted order for continuance on behalf of Collins.
08/12/1999 Discovery conference is set.
08/13/1999 Winters' counsel signs for and receives discovery.
08/16/1999 Collins is arraigned and trial set for 10/18/1999. Collins was out on bond for burglary of an automobile when arrested on the present armed robbery charge.
09/16/1999 Order of the Mississippi Supreme Court dismissing Collins' motion for appointment of attorney and right to preliminary hearing.
09/29/1999 Collins files pro se motions to suppress statement of D.C., motion to quash indictment, motion for a prompt preliminary hearing, motion for bond hearing, and motion for appointment of attorney.
10/01/1999 Winters is set for arraignment and refuses to waive arraignment. Arraignment is reset to 10/04/1999 by circuit court. Trial is set for 10/18/1999. Order for continuance is granted on behalf of the court.
10/04/1999 Winters is arraigned.
10/07/1999 Winters makes pro se motions for severance and to reduce bond.
10/08/1999 Collins makes pro se motions for speedy trial (constitutional right) and severance. Winters files pro se motion to suppress statements of D.C., quash indictment, and separate trial.
10/18/1999 Set for Trial; State announces it is ready for trial. Defendants announce ready subject to hearing their motions first. Winters' motion to sever is heard and denied. Winters' motion to reduced bond heard and granted. Winters files a motion to dismiss based on violation of constitutional and statutory right to a speedy trial.
10/19/1999 Motion to Amend Indictment is filed.
10/20/1999 State notifies attorneys for the defendants by fax that State is seeking trial date of 11/08/1999 as the trial will not be reached by end of week. No trial dockets for the weeks of 10/25/1999 and 11/01/1999. Winters' attorney agrees to 11/08/1999 trial date if there is no plea agreement. If no plea agreement, Winters' attorney will seek 02/08/2000 trial date. Collins' attorney not available 11/08/1999 and would like 12/13/1999 trial date. Collins makes a pro se motion to dismiss for violation of constitutional right to speedy trial.
10/21/1999 Motion to Amend Indictment is heard and granted. Trial not reached due to trial of another case. Winters renews his motion to sever, and motion is denied. Winters makes a motion for further reduction of bond, and the motion is denied. Collins requests that he be appointed new counsel and Collins' counsel joins in that request. Request is denied. Winters' counsel agrees to 11/08/1999 for trial but Collins' counsel has set matters for weeks of 11/08 and 11/15. Weeks of 11/22 and 11/29 are not trial docket weeks. Counsel for Winters has previously set matters the week of 12/06/1999. Trial is reset to 12/13/1999.
10/22/1999 Collins makes a motion for discovery.

*651 10/26/1999 Collins makes a pro se motion for docket sheet.
12/01/1999 Winters makes a pro se motion for writ of habeas corpus.
12/07/1999 Collins makes a pro se motion for speedy trial (constitutional right).
12/13/1999 State ready for trial. Defendants announce they are not ready for trial. Winters' counsel makes motion to withdraw as does Collins' counsel. Collins joins his counsel's motion to withdraw. Powell informs court that Collins has filed two bar complaints against him. Court directs that case hold its place for trial and that Winters' counsel's motion to withdraw to be heard following week. Collins also files a pro se motion to dismiss indictment claiming a violation of his constitutional right to a speedy trial. Collins files a pro se motion to quash the indictment against him.
12/20/1999 Neither trial nor motion reached during week of 12/13/1999. State requests by fax that trial be set for 01/10/2000. Collins' counsel suggests 3/13/2000. No agreement on trial date is reached as both attorneys are attempting to withdraw and do not want a trial date set until the circuit court hears their motions.
12/23/1999 Winters makes pro se motion to quash indictment.
01/10/2000 Case set for call to obtain trial date. The wrong Ervin Winters is transported from the jail. Winters and his younger brother have the same name and are both being held in custody. The case is reset for a 01/14/2000 call date and to hear motions to withdraw. The order for continuance is granted on the behalf of Collins and Winters.
01/14/2000 Winters' pro se motion to dismiss indictment for violation of constitutional and statutory right to a speedy trial is filed. Burkes' motion to withdraw set. Court orders Burkes to provide Winters with copies of case authorities discussing the possibility that a defendant could forfeit the right to counsel. Court informs Winters that this case needs to come to trial and that he may forfeit his right to attorney because of the obstacles he places in his counsel's way. Motion is reset to 01/21/2000 to permit Winters time to review cases. Winters waives his speedy trial rights from 01/14/2000 to 01/21/2000. Collins is not present. Order of continuance granted on behalf of Collins and Winters.
01/21/2000 Burkes' motion to withdraw is reset to 02/21/2000. Burkes is in trial on another matter. Motion will be heard in Biloxi.
01/24/2000 Winters and Collins file pro se notices of hearing motions.
02/16/2000 Winters makes pro se motion to dismiss indictment asserting constitutional and statutory rights to a speedy trial.
02/21/2000 Burkes' motion to withdraw is set in Biloxi. Motion is reset to 03/10/2000 as Winters was not transported in first group of prisoners. There is not sufficient time before the ending of the docket to transport Winters from Gulfport. Burkes is not present. Order of continuance granted on behalf of Winters.
02/29/2000 Collins makes pro se petition for writ of mandamus to the Mississippi Supreme Court.

*652 03/10/2000 No court is held.
05/23/2000 Motions to withdraw by both counsels for both defendants are heard and granted. Burkes informs court that Winters has been abusive to her on the telephone and filed bar complaints against her because she will not file post-trial motions that Winters' prepared. Winters claims that Burkes never sent him the discovery packet from the district attorney's office. After being placed under oath, Winters admits that he received the packet. Both Powell and Burkes are allowed to withdraw. Sumrall and Souser are appointed as counsel but are not present. Case reset to 06/12/2000 for call. Case is to be set for trial on 08/21/2000 or 08/28/2000 depending on availability of newly appointed counsel. Order of continuance granted on behalf of defendants.
06/12/2000 Case set for call. Court sets case for 06/13/2000 conference with all counsel. Collins makes motion to reduce bond, motion to dismiss, motion to suppress, and motion for severance filed.
06/13/2000 Conference with court and all counsel. Motions set for 07/10/2000 and trial is set for 08/28/2000.
06/30/2000 Winters makes a motion for supplemental discovery, motion to dismiss for violation of constitutional right to speedy trial, and motion for fund to hire expert witness filed.
07/10/2000 Motions for severance heard and denied. Collins' motion to suppress is heard and denied. Winters' motion for supplemental discovery is heard and granted in part and denied in part. Motions to dismiss for speedy trial reset to 07/31/2000.
07/31/2000 Motions to dismiss set.
08/01/2000 Motions to dismiss heard. Order for a continuance granted on behalf of court and motions reset to 08/14/2000 allowing State to present additional evidence.
08/14/2000 Additional testimony presented in response to motions to dismiss.
08/29/2000 Trial begins.
¶ 8. Both Collins and Winters were busily filing motions with the circuit court and Supreme Court despite the fact that both were represented by counsel. Winters also filed lawsuits in federal court against Harrison County and its sheriff. Those have been dismissed.

a. Statutory Speedy Trial Right
¶ 9. "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy ... days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (Rev.2000).
¶ 10. The trial began 379 days after Collins' arraignment and 330 days after Winters' arraignment. A significant part of that delay is attributable to the defendants.
¶ 11. The period between arraignment and the first scheduled trial date is chargeable to the State. That comprised sixty-three days for Collins and fourteen days for Winters.
¶ 12. The original trial date was October 18, 1999. The State announced that it was ready to proceed. The defendants announced that they were also ready subject first to the hearing of their motions. The motions kept the trial from occurring, and the next trial date was December 13, 1999. That delay was fifty-six days and is chargeable to the defendants.
*653 ¶ 13. At the next appointed trial date, both Collins' and Winters' counsel moved to withdraw. A ruling on the motions did not occur until May 23, 2000, a period of 162 days. Of this span of time, approximately seventy-eight days are attributable to the State. That is because on January 10, 2000, the State transported the wrong Ervin Winters to the hearing. The next hearing was held January 14, 2000. This four-day delay is chargeable to the State. Nothing conclusive was decided, and the next hearing set was for March 10, 2000. However, court was not held on that day, through no fault of the defendants. Thus we assess to the State the seventy-four days between March 10 and May 23. This leaves eighty-four days of delay attributable to the defendants caused by either themselves or their counsel.
¶ 14. The next period of time is between May 23, 2000, when both attorneys withdrew, and the start of trial on August 29, 2000. This is a period of ninety-eight days, all of which is attributable to the defendants.
¶ 15. The defendants were responsible for 238 days of delay between the times of their arraignments and trial. Reducing Collins' and Winters' respective waits by this number of days brings both well below the 270-day threshold dictated by our speedy trial statute. Neither defendant's statutory right to a speedy trial was violated.

b. Constitutional Right
¶ 16. The constitutional right to a speedy trial attaches at the time of arrest, not at arraignment. Atterberry v. State, 667 So.2d 622, 626 (Miss.1995). "[T]he constitutional right is a weighing test based upon the Barker factors, which `are (1) the length of delay, (2) the reasons for the delay, (3) assertion of the right to a speedy trial, and (4) prejudice to the defense.'" Sharp v. State, 786 So.2d 372, 380 (Miss.2001), referring to Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

1. Length of Delay
¶ 17. There was a delay of 588 days between Collins' arrest and trial, and a delay of 658 days between Winters' arrest and trial. Both periods are well in excess of eight months which is presumptively prejudicial to an accused. Sharp, 786 So.2d at 380. This factor weighs in favor of both Collins and Winters.

2. The Reasons for Delay
¶ 18. The State is responsible for the delay between arrest and the return of the indictment, which was about eight months as to Winters and six months for Collins. One officer testified that the reason for delay in seeking an indictment was because of the number of law enforcement agencies and officers involved. The Federal Bureau of Investigation, Mississippi State Highway Patrol, and Gulfport Police Department were involved. Every officer on daytime duty with the Gulfport Police Department responded to the scene of the robbery. Each of these officers had to be interviewed. There was also apparently some delay in receiving reports from the FBI. There was no evidence that the State intentionally delayed bringing the defendants to trial. The State also was responsible for the three month delay between the return of the indictment and the original trial date.
¶ 19. The question becomes whether these reasons constituted good cause. The State has the burden of investigation and acquiring proof sufficient to support the return of indictments. The courts are "hesitant to weigh the delay heavily against the State where the cause lies with a `[tentacle] of the State,' such as *654 the State crime lab, rather than with the district attorney's office." State v. Woodall, 801 So.2d 678, 683 (Miss.2001). The cause for delay after the arrest and prior to the indictment was with the investigating agencies, including the Federal Bureau of Investigation.
¶ 20. The majority of delay thereafter was caused by the multiplicity of motions filed by each of the defendants. These two defendants were represented by five different attorneys during these proceedings. "It is well-settled law in the State of Mississippi that when most of the delay in a case is attributable to the many continuances and changing of attorneys by the defense, this factor will weigh against the defense in the balancing test." Sharp, 786 So.2d at 380-81.
¶ 21. We find that the reasons for the State's contribution to the delay were legitimate. Therefore, the defendants do not gain any benefit from this factor.

3. Assertion of the Right
¶ 22. Both defendants asserted their constitutional right to a speedy trial. Winters' first assertion was approximately four months after his arrest and before he was indicted. Collins asserted his right for the first time almost five months after his arrest. In fact, the defendants continued to file speedy trial motions throughout the proceedings even when both were seeking to have their attorneys withdraw. These motions were not set for a hearing until the new counsels were appointed.
¶ 23. The United States Supreme Court has dealt with a similar factual situation. Although the defendants in that case had filed numerous speedy trial motions, the Court found that those assertions did not weigh in their favor. United States v. Loud Hawk, 474 U.S. 302, 314, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986). The defendants had consumed a great deal of time filing "indisputably frivolous" motions. Id. The assertion of the right to a speedy trial "must be viewed in the light of [defendants'] other conduct." Id.
¶ 24. Two commentators have noted "that to have a chance at successfully claiming a speedy trial violation, the defendant must not only assert the right but must do so in a `sincere' fashion." CHARLES WHITEBREAD & CHRISTOPHER SLOBOGIN, CRIMINAL PROCEDURE § 25.04, at 613 (3d ed.1993). Both Collins and Winters filed petitions with the Mississippi Supreme Court. Collins and Winters filed pro se motions with the trial court, many of which the trial judge stated that had those motions been filed by their defense counsel he would have imposed sanctions. Also, both filed numerous complaints against their own counsel in an attempt to have them removed.

4. Prejudicial Delay
¶ 25. Although there is a presumption of prejudice resulting from a delay of more than eight months, the defendants must still show actual prejudice. DeLoach v. State, 722 So.2d 512, 518 (Miss. 1998). "[T]he existence of this presumption, alone, cannot serve as the basis for dismissal of charges against a defendant." Woodall, 801 So.2d at 682.
¶ 26. One of Collins' motions claimed prejudice in that the delay "could diminish the ability of defense witnesses to recall pertinent dates and times that could weaken a possible alibi defense." Winters alleged that he "experienced anxiety, depression, mental anguish, and psychological and mental distress due to the delay" and also that he was unable to remember certain facts and locate alibi Witnesses. In their briefs, both stated that "[s]uch an excessive delay compromises the reliability of a trial in ways that neither party can *655 prove or identify. ..." The defendants have wholly failed in their efforts to demonstrate any actual prejudice.
¶ 27. After considering the Barker factors, we find no violation of the constitutional right to a speedy trial.

2. Batson Challenges
¶ 28. There were four black prospective jurors. The State used peremptory challenges against two of them. Apparently at each use of a peremptory challenge, defense counsel objected and asserted that the challenge was racially motivated. We use the word "apparently" because the peremptory challenges and ensuing discussion were not made part of the record. After the completion of jury selection, the trial judge stated that "[w]e need to clear the record." The trial judge stated that he had found at each defense assertion that they had made no prima facie case that the State was using its peremptory challenges in an impermissible manner.
¶ 29. During the trial judge's effort to "clear up the record," he stated that he would "take judicial notice that since the administration of Mr. Caranna in this office as D.A., that the Court has not detected any challenges of jurors based on race." It is probably inaccurate to state that this was an exercise of judicial notice under the rules of evidence. Judicial notice may be taken of facts which are not "subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." M.R.E. 201(b). Whether a district attorney's office engages in racial discrimination in jury selection does not seem to fit this evidentiary standard.
¶ 30. What the trial judge referred to was actually relevant before the 1986 decision that established the currently relevant analysis for peremptory challenges. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled in part by Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Swain, the court rejected an effort to examine why a prosecutor used peremptory challenges in a specific trial. However, a claim of recurring discrimination required a different response:
We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. ... If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome.
Swain v. Alabama, 380 U.S. at 223-24, 85 S.Ct. 824 (citations omitted).
¶ 31. This focus on systematic exclusion of minorities over time was reversed two decades later with a focus on each particular case. Batson, 476 U.S. at 100, 106 S.Ct. 1712 ("To the extent that anything in Swain v. Alabama ... is contrary to the principles we articulate today, that decision is overruled.") What was not explicitly stated is whether in determining if a prosecutor's benign explanation in a particular *656 case for using a peremptory strike was actually a pretext for racial discrimination, that the decision on credibility had to ignore that judge's past experience with the prosecutor. The "primary ground for veering from Swain's reluctance to limit use of peremptories was that it had led the Swain court to conclude that only proof of repeated striking of blacks over a number of cases would establish an equal protection violation. Terming this `a crippling burden of proof,'" the Batson majority created the three-part process for reviewing the use of the challenges in a specific case. WHITEBREAD & SLOBOGIN, CRIMINAL PROCEDURE § 27.04, at 693.
¶ 32. There are largely unreviewable intangibles that are part of a trial judge's decision on the credibility of a prosecutor in explaining the basis for peremptory challenges. For that reason, a trial judge is accorded considerable deference in determining whether an attorney's explanation for using a peremptory challenge is truthful or pretextual.
"[A] trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons ... will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence." "This perspective is wholly consistent with our unflagging support of the trial court as the proper forum for resolution of factual controversies."
Humphrey v. State, 759 So.2d 368, 384 (Miss.2000) (citations omitted). "Furthermore, the determination of discriminatory intent will likely turn on a trial judge's evaluation of a presenter's credibility and whether an explanation should be believed." Weeks v. State, 804 So.2d 980, 987 (Miss.2001). Some of the time the unspoken intangible may be the judge's perception of the prosecutor arising from past experience. The fact that the judge spoke about this on the record does not by itself cause us to find error.
¶ 33. Even without this statement, the judge had a strong basis to overrule the defense objection. A prima facie case on racial discrimination that justifies requiring an attorney to explain the reasons for peremptory challenges is usually quite objective  has a pattern of striking all or almost all of a certain racial group been set? Batson, 476 U.S. at 96-97, 106 S.Ct. 1712. We do not find that striking two members of the venire and accepting two created that pattern. This is particularly true since the judge later stated that "I have no basis to make a finding based on the past, but certainly based on the facts in this case, ... there was not a prima facie case shown or made."
¶ 34. Defense counsel argues that the challenge of one juror was improper because "I didn't hear him give any kind of basis for  to show that he would be bias or let the death of his son influence him in any way. And that State, I don't believe, even voir dired him on that issue or anything else." As for the other juror, defense counsel stated that the State hasn't "given the slightest inkling of any reason for striking him. ..."
¶ 35. This understanding of the requirement for explaining the basis for a peremptory challenge is incorrect. Only if a prima facie case is made must the attorney be put to the test of explaining the basis for the challenges. Carter v. State, 799 So.2d 40, 46 (Miss.2001). There was no evidence that the prosecutor was systematically removing most members of a specific race from the jury, nor did the trial judge find that "the facts and circumstances raised an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities." Snow *657 v. State, 800 So.2d 472, 478 (Miss.2001). We find no error in the conclusion that no prima facie case was made.

3. Evidence
¶ 36. The defendants assign as error the trial court's admission of three items of evidence.

a. State's Exhibit S-1
¶ 37. State's Exhibit S-1 was a photograph of bank bags found behind an office after the robbery. These photographs were introduced through the testimony of Sharon Keenan, a receptionist at that office. Keenan stated that she saw a black male dressed in black run past her window. Keenan could not see his hands as he ran past. After seeing the man run past, Keenan and another co-worker stepped out the back door of the office and saw three beige canvas bank bags by the sidewalk.
¶ 38. The defense objected to the photograph of the bank bags because the State had failed to show any connection between the bags and the robbery. The State noted that an earlier witness had stated that the two men ran from the bank carrying beige canvas bank bags. The trial judge overruled the objection. The trial judge has broad discretion in determining relevance. We review the rulings only as to whether a clear abuse of discretion occurred. Stallworth v. State, 797 So.2d 905, 910 (Miss.2001). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. This evidence helped tell the story of the robbery. It was likely that someone involved in the robbery had run past the office and dropped the bags, even if the witness could not identify either defendant. We find no error.

b. State's Exhibits S-17 and S-18
¶ 39. Both of these exhibits were of money found in the back seat of the Grand Prix. The defense objected to the introduction of these exhibits on the basis that the bills could not be traced to bills taken from the bank during the robbery. The "bait" money, money of which the serial numbers were recorded so that it could be traced in the event of a robbery, were twenty-dollar bills. The money sought to be introduced into evidence were one- and ten-dollar bills. The defense did not object to the introduction of photographs depicting the interior of the alleged get-away car with bills strewn across the front and back of the car.
¶ 40. We find that the failure to object to other evidence of the currency in the vehicle waives objection to the same evidence in another form. There was evidence that the Grand Prix was connected with the robbery; loose currency was floating around in the vehicle, which jurors could reasonably infer was unusual for most vehicles. The failure to prove that these bills had to be ones taken in the robbery did not make the evidence incompetent. The jury had the right to infer that the money was from the bank and had been left behind as larger bills were retained.

4. Weight and Sufficiency of the Evidence
¶ 41. Although Collins and Winters both label this issue as one concerning the weight of evidence, both also refer to the sufficiency of the evidence. We will consider both kinds of challenges.

*658 a. Sufficiency of the Evidence

¶ 42. When a defendant attacks the sufficiency of the evidence, he is alleging that there is no competent evidence introduced on one or more elements of the crimes. In determining whether that is true, a court is to consider all credible evidence in the light most favorable to the verdict, also making such appropriate evidentiary inferences as are consistent with the verdict. Drake v. State, 800 So.2d 508, 516 (Miss.2001). "We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Id.
¶ 43. Armed robbery requires that the defendant "feloniously take or attempt to take from the person or from the presence the personal property of another and against his will ... by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon. ..." Miss.Code Ann. § 97-3-79 (Rev.2000). The indictment specified that the deadly weapon was a handgun. It is only this element of use of a handgun that Collins and Winters challenge on appeal.
¶ 44. Collins and Winters argue that there was no credible evidence that a handgun was used in the robbery. Susan Danko, the teller who was thrown backwards into a file cabinet when one masked assailant vaulted over her counter, was the only witness who stated that she saw a gun. At one point Danko only stated she was "pretty sure there was a gun." Collins and Winters also point out that no gun was recovered during the police investigation. Kevin Nugent, a customer inside the bank at the time of the robbery, stated that one of the men had a small black object in his hand. When asked if it was a gun, Nugent stated that "[i]f it was, it was a very small gun ... and it wasn't ... highly visible." The thirteen-year-old driver of the apparent getaway car testified that he never saw Collins or Winters with any type of weapon.
¶ 45. Danko's testimony was from an eyewitness. She was almost certain that she saw a gun in the left hand of the robber who had knocked her down. As she crawled away from the man, she said to herself, "Please don't let him shoot anyone." Danko stated that she knew the gun was an automatic because her husband owns several guns and she thought it looked like a Glock. Danko was certain that the gun was not a revolver. On cross-examination, Danko stated that she "would say [she was] positive about the gun because when I saw it I recognized it to be an automatic weapon. ..." Danko admitted that the videotape of the robbery that she reviewed revealed no handgun.
¶ 46. A guilty verdict may be based on the uncorroborated testimony of a single witness. Sturdivant v. State, 745 So.2d 240, 248 (Miss.1999). The jury must have found this testimony to be credible. We find that a reasonable and fair-minded juror could have found the robbery was committed with the aid of a handgun.

b. Overwhelming Weight of the Evidence
¶ 47. Both defendants argue that a finding by the jury that a handgun was used in the commission of the robbery was against the overwhelming weight of the evidence. Evaluating that claim requires that the court "accept as true the evidence which supports the verdict and ... reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Powell v. State, 806 So.2d 1069, 1081 (Miss.2001).
*659 ¶ 48. We have already discussed the evidence. We do not find any great weight of evidence contrary to the verdict.

5. a. Motion to Sever
¶ 49. Winters argues that the circuit court erred in not granting him a trial separate from that of Collins. Winters bases his argument on two points: (1) a statement made by Collins that the teenage driver was not involved in the robbery and (2) Collins' outburst in front of the jury near the close of trial. Winters argues that a statement by Collins to a police officer stating the thirteen-year-old boy was not involved in the armed robbery, but making no mention of Winters, "could be interpreted to involve Winters." Winters argues that this statement supports the teenager's testimony that he saw Collins and Winters enter the bank.
¶ 50. "[T]he decision whether to grant a severance depends on whether the severance is necessary to promote a fair determination of the defendant's guilt or innocence." Carter v. State, 799 So.2d 40, 44 (Miss.2001). "Where the testimony of one defendant did not tend to exculpate himself at the expense of another and there does not appear to be a conflict of interest among the co-defendants, severance is not required." Id. at 45. Severance is also proper where the evidence points more to the guilt of one co-defendant than the other. Payton v. State, 785 So.2d 267, 269 (Miss.1999). Court rules place the decision whether to grant or deny a severance in non-death penalty cases within the discretion of the trial court. URCCC 9.03. Unless one can show actual prejudice, a trial court cannot be found to have abused its discretion. Payton, 785 So.2d at 269.
¶ 51. Collins' statement did not exculpate himself at the expense of Winters. That statement did not even mention Winters, nor did it imply that a second individual was involved in the robbery. There also does not appear to be any conflict of interest between Collins and Winters. Neither put on any type of defense. Neither implied that the other committed the crime. We find that the circuit court did not abuse its discretion in refusing to grant a severance.

5. b. Mistrial
¶ 52. Moments after the jury was returned to the courtroom to receive instructions, Collins stood up and claimed that the video of the robbery viewed by the jury was not the original tape and that he had evidence to prove his allegation. The judge told Collins that he was welcome to take the stand. The judge ultimately ordered Collins removed from the courtroom when he continued claiming that evidence he was holding in his hand proved his innocence. At this point, Winters made a motion for a mistrial, which was denied.
¶ 53. Winters claims that this outburst and Collins' subsequent removal from the courtroom made it more likely he would be "convicted because of his association with Collins." Winters claims that Collins was allowed to testify without being placed under oath and without allowing himself an opportunity to cross-examine Collins.
¶ 54. Whether to grant or deny a request for a mistrial is committed to the discretion of the trial court. Snow v. State, 800 So.2d 472, 486 (Miss.2001). "Elementary to all trial proceedings is the proposition that the occurrence of any prejudicially incompetent matter or misconduct before a jury, the damaging effect of which cannot be removed by admonition or instructions, necessitates a mistrial." Snow, 800 So.2d at 486. After the jury was excused from the courtroom, a discussion occurred as to Collins' allegations. Collins *660 was holding at the time of his outburst photographs that had been in his possession for months. The district attorney, defense attorneys, and defendants agreed to stipulate that the photographs had been provided prior to trial. The stipulation explained that some photos were stills from the video and others were taken by a 35-millimeter camera at the bank. This stipulation was read to the jury when it returned.
¶ 55. Winters was not prejudiced by Collins' outburst. Winters agreed to the stipulation designed to address the issues that Collins' outburst had raised.

6. Sentence
¶ 56. Winters assigns as error the circuit court's sentencing him to twenty-five years without the possibility of parole or probation. The court imposed sentence without the benefit of a pre-sentence investigation or proof that he met the requirements to be sentenced as a habitual offender.
¶ 57. A trial judge may order a pre-sentence investigation if he has discretion as to sentencing. URCCC 11.02. Winters was indicted under a habitual offender statute that requires that the maximum term for the charged felony be imposed without possibility of suspension of or reduction in sentence. Miss.Code Ann. § 99-19-81 (Rev.2000). The maximum sentence for robbery committed by use of deadly weapon is life imprisonment, if a jury so finds. Miss.Code Ann. § 97-3-79 (Rev.2000). Where a jury fails to fix a penalty, the trial judge may sentence an individual for any term not less than three years. Id.
¶ 58. Under our rules, a pre-sentence investigation would be discretionary. The trial judge was not required to order a pre-sentence investigation. In any event, Winters' defense counsel announced that he was ready to proceed with sentencing. The State moved to introduce the evidence from the trial, indictments, certified copies of the pen-packs, and sentencing orders on the previous convictions. These were admitted without objection by Winters' counsel. The Court specifically asked Winters' counsel if he had "anything in the record that needs to be presented other than what's been presented by the State?" The attorney stated that he did not. Winters' defense counsel now laments that he did not present any "mitigating factors."
¶ 59. Winters also argues that he did not meet the requirements of the habitual offender status as he "was not convicted twice previously of any felony ... upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms. ..." Miss.Code Ann. § 99-19-81 (Rev.2000). Winters was convicted on September 2, 1993, of two separate felony counts of transfer of a controlled substance and sentenced to a ten-year term for each count. One count was for cocaine and the other crack cocaine. The sentences ran concurrently.
¶ 60. Concurrent sentences are "separate" terms under section 99-19-81. Jackson v. State, 518 So.2d 1219 (Miss.1988). The evidence presented by the State demonstrated that one drug offense took place on January 8, 1993, and the other on August 7, 1993. These were separate incidents. We find no error in Winters' sentencing.
¶ 61. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY FOR WILLIAM RAY COLLINS OF CONVICTION OF ARMED ROBBERY AND SENTENCE TO SERVE FORTY YEARS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID *661 SENTENCE BEING WITHOUT HOPE OF PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HARRISON COUNTY.
¶ 62. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY FOR ERVIN RAY WINTERS OF CONVICTION OF ARMED ROBBERY AND SENTENCE TO SERVE TWENTY-FIVE YEARS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCE BEING WITHOUT HOPE OF PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HARRISON COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.