946 So.2d 796 (2006)
Jeffer R. CLAYTON a/k/a Jeffrey Ray Clayton, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02210-COA.
Court of Appeals of Mississippi.
June 20, 2006.
Rehearing Denied October 24, 2006.
Certiorari Denied January 11, 2007.
*798 Lisa D. Collums, Gulfport, attorney for appellant.
Office of the Attorney General by Scott Stuart, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. A Harrison County jury found Jeffer R. Clayton guilty of armed robbery. The Circuit Court of Harrison County sentenced Clayton to fifteen years in the custody of the Mississippi Department of Corrections as a habitual offender. Clayton appeals, arguing that (1) the trial court erred by denying his motion for a speedy *799 trial; (2) his trial counsel was ineffective for failing to re-assert the speedy trial issue; (3) the trial court erred by denying Clayton's motion for a JNOV; and (4) the cumulative effect of the errors necessitates reversal. In a pro se supplemental brief, Clayton asserts several other grounds for his ineffective assistance of counsel claim and also argues that he was entitled to a jury instruction on impeachment.
¶ 2. We find no error and affirm Clayton's conviction and sentence.

FACTS
¶ 3. Clayton had a savings account at Hancock Bank. As of June 12, 2001, the account had a zero balance. At approximately 9:30 a.m. on June 14, 2001, Clayton entered the Highway 49 branch of Hancock Bank in Gulfport. He waited in line for the next available teller. Khiedrae DeLoach asked if she could help Clayton, who walked to Deloach's teller window and asked to make a withdrawal from his savings account. Deloach requested identification.
¶ 4. Deloach testified that, at this point, Clayton ordered her to give him money from her drawer and stated that he had a nine millimeter gun. Clayton also pulled up his shirttail and revealed the butt of a gun protruding from his pocket. Frightened, Deloach began collecting money from the drawer. Clayton told her to put it in an envelope. Deloach complied and gave Clayton some money in a white envelope with "Hancock Bank" printed on it. Clayton told Deloach that, if she told anyone about the robbery, he would kill her. Then, Clayton left the bank. Immediately, Deloach informed another teller that she had been robbed. Several bank employees rushed to the window and observed Clayton exiting the parking lot in a black Kia Sportage vehicle.
¶ 5. A bank employee called the police and described the getaway car. Several minutes later, Officers Matt Dailey and Anthony Stewart of the Gulfport Police Department observed a black Kia Sportage vehicle stopped at a red light on Highway 49. The officers stopped the vehicle and ordered its four occupants, including Clayton, to exit the vehicle and lie down on the ground. During this process, Officer Stewart observed an envelope with money in it protruding from Clayton's pants pocket. When Officer Dailey directed Clayton to stand, the envelope fell out of Clayton's pocket. Officer Dailey secured the envelope. Clayton told Officer Dailey that he had gone into the bank and told the teller that he wanted some money. He also said that the other people in the car were not involved and had not known what was going on.
¶ 6. Police discovered that the envelope taken from Clayton contained $1,510 in cash. The envelope was white with "Hancock Bank" printed on it. Later, bank employees discovered that $1,510 in cash was missing from Deloach's drawer. No gun was recovered despite searches of Clayton's person, the Kia Sportage, and the interior of the bank.
¶ 7. Clayton's version of events differed from that of Deloach. Clayton testified that he had visited the bank in order to make a $1,510 withdrawal from his savings account. Clayton stated that, when Deloach requested identification, he gave her his Social Security number. Then, Deloach counted out $1,510 in cash. She gave it to Clayton in an envelope and he left the bank. Clayton denied that he had brought a gun to the bank or robbed the bank. In closing arguments, Clayton's counsel argued that Deloach had mistakenly given Clayton the $1,510 without first checking his account balance. Counsel argued *800 that Deloach had lied about the robbery to conceal her mistake.
¶ 8. The jury found Clayton guilty of armed robbery.

LAW AND ANALYSIS
I. WHETHER CLAYTON WAS DENIED HIS RIGHT TO A SPEEDY TRIAL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND BY ARTICLE 3, SECTION 26 OF THE MISSISSIPPI CONSTITUTION.
¶ 9. Clayton's trial occurred on May 6 and 7, 2003. On May 1, 2002, Clayton filed a pro se motion to dismiss the case for lack of a speedy trial or, in the alternative, to be tried immediately. Clayton's counsel brought the motion forward for hearing on October 22, 2002, arguing that Clayton had been denied his constitutional right to a speedy trial and that the case should be dismissed. Following is a chronology of the events leading up to the speedy trial hearing:
May 2001Clayton, serving a prison sentence for uttering a forgery, was released on earned release supervision.
June 14, 2001Clayton was arrested for the armed robbery.
June 15, 2001Due to Clayton's arrest, his earned release supervision was administratively revoked and he was sent back to Parchman to serve the duration of his sentence.
September 15, 2001A detainer was placed in Clayton's file concerning the pending armed robbery charge.
November 28, 2001Clayton's file was transferred to the district attorney's office.
February 18, 2002Clayton was indicted for armed robbery.
June 14, 2002Clayton's counsel filed an entry of appearance. Counsel stated that he was appointed in May 2002.
August 3, 2002Order entered for Clayton to be transferred to the Harrison County Jail for arraignment on August 19, 2002 and trial on November 12, 2002. The prosecutor stated that the arraignment was originally set for July 1, 2002, but that the date was changed to August 19, 2002 per agreement with Clayton's counsel so that Clayton would not have to be transferred twice.
¶ 10. At the hearing, Clayton argued that his right to a speedy trial had been violated because he suffered actual prejudice from the delay in bringing him to trial. Specifically, he argued that the delay had hampered his defense by preventing defense counsel from locating alibi witnesses. He also contended that the detainer had negatively affected his conditions of incarceration by depriving him of opportunities for good time, trusty status, and to be transferred to a private facility. The trial court denied the motion. On appeal, Clayton argues that his right to a speedy trial was violated and the court should have dismissed the armed robbery charge.
¶ 11. The Sixth Amendment of the United States Constitution guarantees the right to a speedy trial, which is a fundamental right. State v. Woodall, 801 So.2d 678, 681(¶ 8) (Miss.2001). The speedy trial right attaches when the defendant is accused, that is, "at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge." Bailey v. State, 463 So.2d 1059, 1062 (Miss.1985) (quoting Perry v. State, 419 So.2d 194, 198 (Miss.1982)). In assessing the merits of a speedy trial claim, this Court employs the four-factor balancing test from Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 *801 L.Ed.2d 101 (1972). The factors to be considered are: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. Manix v. State, 895 So.2d 167, 175-76(¶ 16) (Miss. 2005). No one factor is dispositive, and the totality of the circumstances must be considered in determining whether the speedy trial right has been violated. Jefferson v. State, 818 So.2d 1099, 1106(¶ 11) (Miss.2002). On review of the denial of a motion to dismiss for lack of a speedy trial, "[t]his Court will uphold the trial court's findings . . . where supported by `substantial, credible evidence; [but] if no probative evidence supports the trial court's finding[s] . . ., this Court will ordinarily reverse.'" Woodall, 801 So.2d at 681(¶ 7) (quoting Ross v. State, 605 So.2d 17, 21 (Miss.1992)). We will reverse only if the trial court's findings were clearly erroneous. Id.
A. Length of delay
¶ 12. Any delay of over eight months is presumptively prejudicial and triggers the balancing of the other three Barker factors. Woodall, 801 So.2d at 682(¶ 12). However, the existence of the presumption, without more, cannot serve as the basis for dismissal of the charge against the defendant. Id. Clayton was apprehended on June 14, 2001 for the armed robbery, and a detainer was placed in his file on September 15, 2001. At the time of the speedy trial hearing, his trial was scheduled for November 12, 2002.
¶ 13. The lodging of a detainer against a person otherwise in custody suffices to make the prisoner an accused. Bailey, 463 So.2d at 1062. The delay of over fourteen months between the placement of the detainer and Clayton's trial date was presumptively prejudicial, and the trial court correctly conducted a balancing of the other three Barker factors.
B. Reason for delay
¶ 14. The prosecutor explained that there were several reasons for the delay. The police investigation was delayed when the investigating detective left the police force and two other officers took over the investigation. Due to this delay, the investigating officer did not transfer Clayton's file to the district attorney's office until November 28, 2001. The district attorney's office presented the case to the grand jury as soon as was possible given the office's caseload. Clayton's case was set for trial on November 12, 2002. The trial court opined that the pre-trial delay in this case was typical for the district due to docket congestion. The court did not clarify whether the reason for the delay was neutral or was charged against Clayton or against the State.
¶ 15. The evidence of the reason for the delay indicates that the State did nothing to purposely delay Clayton's trial. Rather, the delay was caused by the police department's personnel change, by the district attorney's heavy caseload, and by docket congestion. Negligence causing delay weighs slightly against the State. Perry v. State, 637 So.2d 871, 875 (Miss. 1994). And, delay due to docket congestion may be weighed against the State, but not heavily. Adams v. State, 583 So.2d 165, 169 (Miss.1991). Accordingly, the docket congestion and any negligence on the part of the State that contributed to the delay in bringing Clayton to trial weighs slightly against the State. We find that the reason for the delay weighed slightly against the State.
C. Defendant's assertion of the speedy trial right
¶ 16. While the State bears the burden to bring the defendant to trial, the *802 defendant has some responsibility to assert the speedy trial right. Wiley v. State, 582 So.2d 1008, 1012 (Miss.1991). Almost one year after his arrest, Clayton filed a motion to dismiss for lack of a speedy trial, or in the alternative, to be tried immediately. Our supreme court has held that the defendant's demand for dismissal or for an instant trial is insufficient to assert the speedy trial right. Perry v. State, 637 So.2d 871, 875 (Miss.1994). Consequently, this factor weighs against Clayton. Id.
D. Prejudice
¶ 17. The length of the delay in this case was presumptively prejudicial to Clayton. As recognized by the trial court, while Clayton made allegations of actual prejudice, there was no evidence that any actual prejudice resulted from the delay. There was no evidence to support Clayton's claim of lost witnesses or to support his claim that the delay negatively affected the conditions of his confinement under his previous sentence. This Court "will not infer prejudice to the defense out of the `clear blue'" and has "remained reluctant to uphold dismissal of charges on speedy trial grounds where the defendant suffered no actual prejudice." State v. Magnusen, 646 So.2d 1275, 1285 (Miss.1994); Woodall, 801 So.2d at 685(¶ 24). We find that the prejudice factor weighed against Clayton.
E. Conclusion
¶ 18. It is apparent that Clayton suffered presumptively prejudicial delay caused by a personnel change in the police department, by the district attorney's heavy caseload, and by docket congestion. Clayton did not assert his speedy trial right or show that he incurred any actual prejudice from the delay. Considering the totality of the circumstances, we find that the trial court's conclusion that Clayton's right to a speedy trial was not violated was supported by substantial evidence and was not clearly erroneous.
¶ 19. When Clayton obtained a ruling on the speedy trial issue from the trial court, his trial was scheduled for November 12, 2002. Therefore, our review of the trial court's decision has focused on the delay between the placement of the detainer and Clayton's November 12, 2002 trial setting. However, after the trial court denied Clayton's motion to dismiss, there was an approximate six month delay until Clayton's trial. The docket sheet reflects that the trial court entered three orders for a continuance during the period between November 12, 2002 and May 6, 2003. Other than the docket sheet, no evidence concerning the delay appears in the record. While Clayton complains of this additional delay on appeal, he did not raise the issue in the trial court; therefore, this issue is barred from appellate review. Sanders v. State, 678 So.2d 663, 670 (Miss. 1996).
II. WHETHER CLAYTON WAS ENTITLED TO A JURY INSTRUCTION ON IMPEACHMENT OF DELOACH'S TESTIMONY.
¶ 20. Clayton argues that a statement which Deloach made to the police five days after the robbery was inconsistent with her trial testimony. In the statement, Deloach averred that Clayton had said he had a nine millimeter gun in his pocket and that he lifted his shirt and revealed "something but [Deloach] did not know what it was." At the trial, Deloach testified that she had seen the butt of a gun protruding from Clayton's pocket and that she had known it was a gun from her prior experience with guns. Clayton, pro se, argues that he was entitled to an "impeachment" jury instruction to the effect that Deloach's prior inconsistent statement to the police could discredit her trial testimony that she had seen a gun.
*803 ¶ 21. A party preserves error in the denial of a jury instruction by tendering the instruction to the trial court, suggesting the instruction is correct, and requesting that the court submit the instruction to the jury. Carmichael v. Agur Realty Co., Inc., 574 So.2d 603, 613 (Miss.1990). Clayton never requested an impeachment instruction. Thus, he did not obtain a ruling on the instruction from the trial court and did not preserve this issue for appellate review.
III. WHETHER CLAYTON RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
¶ 22. Clayton, with new appellate counsel, argues that his trial counsel's performance was constitutionally deficient for failure to reassert his right to a speedy trial when his November 12, 2002 trial setting was rescheduled. Clayton raises additional pro se arguments that his counsel was ineffective for failing to secure an impeachment jury instruction, to secure a hearing on the admissibility of his confession, to object to the prosecutor's closing arguments concerning his prior convictions, and to secure a fair and impartial jury. Clayton argues that he is entitled to a new trial with competent counsel.
¶ 23. It is unusual for this Court to reach the merits of an ineffective assistance of counsel claim on direct appeal. Wilcher v. State, 863 So.2d 776, 825 (¶ 171) (Miss.2003) (quoting Edwards v. State, 797 So.2d 1049, 1060(¶ 30) (Miss.Ct. App.2001)). The case of Read v. State, 430 So.2d 832, 841 (Miss.1983), established that a defendant may raise the issue of ineffective assistance of counsel on direct appeal, but this Court may determine the merits of the claim only when "(a) . . . the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the parties stipulate that the record is adequate and the Court determines that findings of fact by the trial judge able to consider the demeanor of witnesses, etc. are not needed." A conclusion that the record affirmatively shows ineffectiveness of constitutional dimensions is equivalent to a finding that the trial court should have declared a mistrial or ordered a new trial sua sponte. Colenburg v. State, 735 So.2d 1099, 1102(¶ 8) (Miss.Ct.App.1999). If the record cannot support a claim of ineffective assistance of counsel on direct appeal and the case is otherwise affirmed, then the appropriate resolution is to deny relief without prejudice to the defendant's right to raise the issue via appropriate post-conviction proceedings. Read, 430 So.2d at 841.
¶ 24. In the instant case, the parties have not stipulated to the adequacy of the record. We proceed to determine if the record "affirmatively shows ineffectiveness of constitutional dimensions." This Court applies the two-prong test from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in reviewing claims of ineffective assistance of counsel. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under the first prong of the Strickland test, the defendant must demonstrate that his counsel's performance was deficient; under the second prong, the defendant must show that the deficiency prejudiced the defense of the case. Foster v. State, 687 So.2d 1124, 1129 (Miss.1996). There is a strong but rebuttable presumption that counsel's performance fell within the wide range of reasonable professional assistance. Leatherwood v. State, 473 So.2d 964, 969 (Miss.1985). The presumption may be rebutted with a showing that, but for counsel's deficient performance, a different result would have occurred. Id. at 968. To constitute ineffective assistance, counsel's errors must have been so serious that they deprived the defendant of a fair trial, one whose result was reliable. Foster, 687 So.2d at 1129.
*804 ¶ 25. Our review of the record reveals no ineffectiveness of constitutional dimensions. There is no evidence that counsel was deficient in failing to reassert a speedy trial violation when Clayton's trial was rescheduled from November 12, 2002 to May 6, 2003. As previously discussed, the record contains no information about this delay that would enable this Court to ascertain whether the delay violated Clayton's speedy trial right and whether counsel's failure to reassert a violation was prejudicial.
¶ 26. Clayton also complains that his counsel was deficient in failing to secure a jury instruction on the impeachment of Deloach's testimony, to secure a hearing on the admissibility of his statement to Officer Dailey, to object during closing arguments, and to secure a fair and impartial jury because one juror worked for Hancock Bank. On this record, counsel's decisions appear to be within the ambit of reasonable trial strategy that did not deprive Clayton of a fair trial. There is no indication that Clayton's statement to Officer Dailey should have been excluded from evidence or that, given the other the evidence against Clayton, the exclusion of the statement would have been outcome-determinative. Nor is there any indication that the result of Clayton's trial would have been different had counsel requested that a jury instruction on impeachment be given in addition to the general weight and credibility instruction given by the trial court. See Swann v. State, 806 So.2d 1111, 1117(¶ 24) (Miss.2002). And, counsel's failure to object during closing arguments is presumed to be strategic. Wiley v. State, 517 So.2d 1373, 1380 (Miss.1987). Finally, there is no showing that defense counsel was deficient for failing to use a peremptory strike on the Hancock Bank employee; counsel exhausted all of his peremptory strikes on other jurors. See Le v. State, 913 So.2d 913, 953 (¶ 148) (Miss.2005). Therefore, we deny relief on this issue without prejudice to Clayton's right to raise it in appropriate post-conviction proceedings.
IV. WHETHER THE TRIAL COURT ERRED BY DENYING CLAYTON'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.
¶ 27. Clayton filed a motion for a JNOV challenging the sufficiency of the evidence. The motion was denied by the trial court. In reviewing the denial of motion for a JNOV, this Court views the evidence in the light most favorable to the verdict. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005). We will affirm if any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. And, "[m]atters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." Harveston v. State, 493 So.2d 365, 370 (Miss.1986).
¶ 28. To constitute armed robbery, the defendant must have (1) feloniously taken or attempted to take another's personal property; (2) from the person or from the presence; (3) against the person's will; (4) by violence to his person, or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon. Miss.Code Ann. § 97-3-79 (Rev. 2000). Clayton argues that the evidence was insufficient to establish that he exhibited a deadly weapon during the robbery. He points out that Deloach's testimony was the sole evidence that he had a gun, that no gun was recovered though he was detained by police only minutes after the robbery occurred, and that no gun was visible on the videotape of the robbery. Clayton argues that, due to the conflict between Deloach's statement to police and her trial testimony, Deloach's testimony was incredible and legally insufficient to establish that he exhibited a gun.
*805 ¶ 29. The facts in this case bear similarity to those in Collins v. State, 817 So.2d 644, 658 (¶¶ 44-46) (Miss.Ct.App.2002). In Collins, the two defendants were found guilty of armed robbing a bank. Id. at 649(¶ 6). Though several persons witnessed the robbery, only one eyewitness, a bank teller, stated that she "was almost certain" she had seen one robber with a gun. Id. at 658(¶ 44). At one point, the teller stated that she had been only "`pretty sure there was a gun.'" Id. The videotape of the robbery did not show that the robber had a gun, and no gun was recovered during the police investigation. Id. This Court found that the teller's testimony was sufficient to establish the element of exhibition of a deadly weapon because "a guilty verdict may be based on the uncorroborated testimony of a single witness." Id. at (¶ 46).
¶ 30. Deloach was an eyewitness to the robbery. As in Collins, the jury was entitled to weigh the credibility of Deloach's testimony that Clayton exhibited a gun. We find that a reasonable jury could have found from Deloach's testimony that Clayton exhibited a deadly weapon during the robbery. Though Clayton does not challenge the proof of the other elements of armed robbery, we find that the evidence supporting these elements was sufficient to enable a reasonable jury to return a guilty verdict.
V. WHETHER THE CUMULATIVE ERRORS MANDATE THE REVERSAL OF CLAYTON'S CONVICTION.
¶ 31. Clayton argues that this Court should find that the individual errors that occurred in this case, when considered in combination, amount to reversible error. Indeed, this Court possesses discretion to determine whether errors found harmless in themselves, "when considered cumulatively[,] require reversal because of the resulting cumulative prejudicial effect." Glasper v. State, 914 So.2d 708, 729(¶ 46) (Miss.2005) (quoting Byrom v. State, 863 So.2d 836, 847(¶ 13) (Miss. 2003)). A predicate to the application of cumulative error analysis is our finding that error occurred in the proceedings below. Id. We have found that no error occurred in Clayton's trial. Therefore, there was no cumulative error.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.